Isobel WEILL, et al., Plaintiffs,

v.

DOMINION RESOURCES, INC.,
et al., Defendants.

Civ. A. No. 3:94CV539.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 9, 1994.

Jay Joseph Levit, John B. Mann, Levit & Mann, Richmond, VA, Jules Brody, Howard T. Longman, Stull, Stull & Brody, New York City, Irving Morris, Karen L. Morris, Patrick F. Morris, Liam G.B. Murphy, Morris & Morris, Wilmington, DE, Andrew S. Friedman, Bonnett, Fairbourn & Friedman, Phoenix, AZ, for plaintiffs.

Robert Godfrey, Gerald Thomas Zerkin, Gerald T. Zerkin and Associates, Richmond, VA, Liesl Dale Wilke, Hunton Williams, Richmond, VA, David Pastor, Kenneth G. Gilman, Gilman & Pastor, Boston, MA, for Frank Gregory.

Everette G. Allen, Jr., John R. Walk, Hirschler, Fleischer, Weinberg, Cox, & Allen, Richmond, VA, Frank Grey LaPrade, III, Thomas Francis Farrell, II, James Linwood Sanderlin, James A. Murphy, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, Charles C. Platt, Paul K. Connolly, Jr., LeBoeuf, Lamb, Greene & MacRae, New York City, for defendants.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Defendants' motion to dismiss for failure to state a claim upon which relief can be

granted pursuant to Federal Rules of Civil Procedure 12(b)(6). *Gregory v. Dominion* has been consolidated with *Weill v. Dominion* to form the instant action. For the reasons stated herein, Defendants' motion is GRANTED. These cases are hereby DISMISSED WITH PREJUDICE.

## I

Defendant Dominion Resources, Inc. ("DRI" or "Dominion"), is a holding company whose principal subsidiary is Virginia Electric & Power Co. ("Virginia Power"). Defendant Thomas E. Capps ("Capps") has served on the DRI Board of Directors continuously since November 1986. He has served as Dominion's President and Chief Executive Officer since May 1, 1990, and its Chairman of the Board since December 1992. In addition, Capps became Vice–Chairman of the Board of Directors of Virginia Power in April 1989. In December of 1992, Capps was elected Chairman of the Board of Directors of Virginia Power.

Plaintiffs are stockholders who purchased Dominion stock during a period when Defendants allegedly perpetrated a fraudulent scheme to create and maintain artificially inflated prices for Dominion's common stock on the New York Stock Exchange ("NYSE"). The plaintiffs in both *Gregory v. Dominion* and *Weill v. Dominion* claim violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder by the SEC. The original *Weill* plaintiffs additionally allege violations of Sections 11 and 12(2) of the Securities Act of 1933.[1]

The alleged facts in both actions are similar. Indeed, the *Gregory* Complaint, which followed the *Weill* suit, is almost identical to the latter down to the point where both erroneously refer to Defendant Thomas E. Capps as "James" Capps.

The alleged "fraudulent scheme" occurred between August 1, 1991 and June 20, 1994 (the "Class Period"). Defendants purportedly misrepresented and omitted "material facts about Dominion and its undisclosed

struggle with Virginia Power in the Company's public documents and releases." *Gregory* Complaint, § 14. Plaintiffs contend Defendants violated their duties of full disclosure under the 1934 Act, which caused Dominion common stock to trade at artificially inflated prices on the NYSE.

On June 30, 1986, the Virginia Corporation Commission ("SCC" or the "Commission") issued an order ("1986 Order") which attempted to define the proper relationship between the directors and officers of Virginia Power, and those of Dominion and other Dominion subsidiaries. In doing so, the Commission emphasized, *inter alia,* that it would look to the directors of Virginia Power for the proper management of the company, and that the utility directors were to elect capable individuals as corporate officers. *See In re: Ex Parte Investigation of Corporate Reorganization of Virginia Electric and Power Company,* PUE 830060, at 2–3 (Virginia Corporation Commission, June 30, 1986).

Subsequently, Plaintiffs contend the defendants breached the "letter and spirit" of the 1986 Order by interfering with Virginia Power's decision-making process. Plaintiffs urge that Dominion made two misrepresentations in its annual reports, and further failed to disclose ten "material facts" regarding its alleged interference with Virginia Power.

The first "misrepresentation" is found in Dominion's 1991, 1992 and 1993 Annual Reports. Each report contains a section entitled "Report of Management's Responsibilities" with the following statement:

> Management recognizes its responsibility for fostering a strong ethical climate so that Dominion Resources' affairs are conducted according to *the highest standards of personal and corporate conduct.* This responsibility is characterized and reflected in Dominion Resources' Code of Ethics, which addresses potential conflicts of interest, *compliance with all domestic* and foreign *laws,* the confidentiality of proprietary information, and *full disclosure of public information.*

---

1. Unless otherwise noted, all references are to the complaint and briefs filed in the original *Weill* case.

Complaint, § 26 (emphasis supplied by Plaintiffs).

The second "misrepresentation" is found in the 1993 Annual Report, which contains a section entitled "Future Issues" in the subsection "Utility Issues—Regulatory Policies." The Report reads, in relevant part, "*Regulatory policy continues to be of fundamental importance to Virginia Power.*" Complaint, at § 29 (emphasis supplied by Plaintiffs).

Plaintiffs claim their complaint alleges ten undisclosed "material facts":[2]

1) That Defendants had transferred Virginia Power's finance function to DRI.

2) That Capps had suggested that Bill Stewart be replaced as head of Virginia Power's nuclear program.

3) That Capps had made inappropriate and critical remarks about Virginia Power officers to other officers.

4) That there were instances in which Defendants completely ignored the normal management chain of command, in obtaining information and communicating decisions.

5) That Defendants used Virginia Power personnel in a manner violative of the 1986 Order separating DRI and Virginia Power functions.

6) That Defendants used Paul Bonavia as a "spy" in the Virginia Power organization, using him to circumvent the normal decision-making process.

7) That Defendants studied mergers with other utilities without the proper involvement of Virginia Power.

8) That Defendants attempted to transform the legal department at Virginia Power such that it would report to DRI.

9) That Capps bypassed Virginia Power's executives in making decisions affecting the utility.

10) That Capps had involved himself in Virginia Power's contract negotiations

with CSXT in violation of the 1986 Order.

Plaintiffs' Mem. in Opp., at 21–23, *citing* Complaint, §§ 21–22. Most of these facts were taken from a reported conversation between officers of Virginia Power and Dominion on April 9, 1994. *See* Complaint, § 21.

Around April 1994, Capps retired and James F. Betts was appointed as Dominion's Vice–Chairman. About that same time, the Organization and Compensation Committee at Dominion purportedly authorized an executive search to replace James T. Rhodes, President of Virginia Power. In a memorandum dated June 1, 1994, the Committee allegedly noted, *inter alia*, that no one should hire a successor to Rhodes without first consulting the Dominion Board.

Based on information contained in this memorandum, on June 17, 1994, the SCC issued an order requiring Dominion to show cause why it should not be found in violation of the 1986 Order for disregarding the responsibility and independence of the Virginia Power Board, and the utility's responsibility for selecting officers to manage the utility.

On June 21, 1994, Merrill Lynch lowered its long-term opinion on Dominion from "Above Average" to "Neutral." The report noted that its previous upper boundary for Dominion earnings were no longer attainable "due to apparent internal disagreements between senior officials as to corporate strategy." That same day the market price of Dominion stock fell $1.50 to $37.375.

■ Defendants seek to dismiss the action for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6). Dismissal under 12(b)(6) is properly granted "where, assuming the facts in the complaint are true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Miller v. Pulaski Co. Sheriff's Dept.,* 30 F.3d 130 (4th Cir.1994).

---

2. Although the plaintiff in *Gregory* claims to have alleged the same ten facts in Paragraphs 24–26 of his complaint, a review of the complaint reveals that only facts 1, 7, 8, and 10 have been specifically alleged. The *Gregory* Complaint,

Paragraph 26, does however contain the broad allegation that Capps "stack[ed] the board of directors of Virginia Power with persons controlled by Dominion and sympathetic to Capps' efforts to control Virginia Power."

■ In order to state a Section 10(b) and Rule 10b–5 claim, a plaintiff must sufficiently allege that the defendant "(1) made an untrue [misleading] statement of material fact or omitted a material fact that rendered the statement misleading, (2) in connection with the purchase or sale of a security, (3) with scienter, and (4) which caused plaintiff's losses." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). For the reasons stated hereinafter, the Court agrees with the defendants that plaintiffs have failed to sufficiently allege these requisite elements.

## II

Section 10(b) of the Securities Act of 1934 ("1934 Act") makes it "unlawful for any person ... (b) [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.A. § 78(j)(b). Acting pursuant to the power conferred by § 10(b), the Commission promulgated Rule 10b–5, which forbids the making of "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . ." 17 C.F.R. § 240.10b–5.

Plaintiffs argue that Defendants' disclosures and omissions regarding their management's conduct in connection with the 1986 Order are "material" under Section 10(b) and Rule 10b–5. Plaintiffs contend the decline in market price after the SCC issued its June 17, 1994 show-cause order "conclusively demonstrates that the true facts about Defendants' relationships and contacts with Virginia Power ... was [sic] material to the investing public." Plaintiffs' Mem. in Opp., at 20, *citing* Complaint, § 44. In an effort to highlight the causal connection, Plaintiffs point to the language of the show-cause order ("The current turmoil and uncertainty

may be affecting the personnel of both companies to the detriment of utility operations"), as well as comments made by Merrill Lynch analysts. *See* Plaintiffs' Mem. in Opp., at 20. According to the plaintiffs, once the defendants "touted" the alleged misstatements, they were under an obligation to disclose the alleged omissions. *Id.* at 13.

■ This court agrees with the defendants that none of Plaintiffs' allegations support the conclusion that a reasonable investor would have been misled about the nature of his investment in Dominion stock. The test for determining materiality is whether "there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision." *Parsons v. Hornblower & Weeks–Hemphill, Noyes*, 447 F.Supp. 482, 489 (D.N.C.1977), *aff'd*, 571 F.2d 203 (4th Cir.1978).

> [I]f the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking.

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

Plaintiffs' Complaint points to two allegedly misleading statements in Dominion's Annual Reports:

1) "Management recognizes its responsibility for fostering a strong ethical climate so that Dominion Resources' affairs are conducted according to *the highest standards of personal and corporate conduct.* This responsibility is characterized and reflected in Dominion Resources' Code of Ethics, which addresses potential conflicts of interest, *compliance with all domestic* and foreign *laws,* the confidentiality of proprietary information, and *full disclosure of public information.*" Complaint, § 26 (emphasis supplied by Plaintiffs), *quoting* "Report of Management's Responsi-

bilities," *in* DRI's 1991–93 Annual Reports.

2) *"Regulatory policy continues to be of fundamental importance to Virginia Power."* Complaint, § 29 (emphasis supplied by Plaintiffs), *quoting* "Future Issues", *in* DRI's 1993 Annual Report.

Upon reviewing these two alleged "misstatements," the Court simply cannot conclude that any reasonable investor would consider either statement to be meaningful in making an investment decision. "Compliance with domestic laws," conducting one's affairs with the "highest standards of personal and corporate conduct," and "full disclosure of public information" are mere characterizations of the activities of any lawful corporation. There is nothing extraordinary about these characterizations. If a corporation such as Dominion did not publish such "touting" statements, it is incomprehensible that a reasonable investor would alter his or her opinion of the corporation. For example, one could not reasonably infer that an absence of such statements amounts to the conclusion that a corporation is claiming to conduct its affairs with "mediocre" standards of personal and corporate conduct, or engages in "unlawful" activity, or has a deceptive policy of "selective" disclosure of public information.

For these same reasons, the second Dominion statement, "regulatory policy continues to be of fundamental importance to Virginia Power," is similarly immaterial. Furthermore, it is dubious whether this statement can even be considered false or misleading. To be actionable under Section 10(b) or Rule 10b–5(b), "a statement or omission must be both material and **misleading.**" *See Taylor v. First Union Corp. of South Carolina,* 857 F.2d 240, 243 (4th Cir.1988) (emphasis added). There has been no suggestion that Virginia Power has regarded "regulatory policy" unimportant.

The alleged misstatements are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2nd Cir.1985). Because this Court finds that the alleged misstatements are immaterial, Plaintiffs' contention that Dominion was under an obligation to disclose the alleged omitted facts once they improperly touted the alleged misstatements is without merit. *See* Plaintiffs' Motion in Opp., at 12–13, *citing* Complaint § 26.

### III

■ The defendants further argue that the most Plaintiffs' 10(b) and 10b–5 allegations amount to are corporate mismanagement, breach of fiduciary duty, or other misconduct under state corporate law. As such, they are not actionable under federal securities law. As noted above, this Court has already held that the defendants' alleged "misstatements" were not material. Additionally, this Court agrees with the defendants that the alleged nondisclosures are not material omissions actionable under federal securities law, and at most amount to nothing more than mere corporate mismanagement.

In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479–80, 97 S.Ct. 1292, 1304–05, 51 L.Ed.2d 480 (1977), the Court established the black-letter rule that a shareholder alleging mismanagement and breach of fiduciary duty in a corporate control contest did not state a claim for securities fraud under § 10(b) of the 1934 Act and Rule 10b–5. In that case, a minority shareholder brought suit against the majority shareholders and a firm which had appraised the value of the company's stock for purposes of a merger, alleging deceptive and manipulative conduct in violation of Rule 10b–5. *Id.* at 466–68, 97 S.Ct. at 1297–98. In rejecting the minority shareholder's claims, the Court reasoned the federal securities laws were intended by Congress to cover only those injuries arising from transactional fraud:

> [W]e do not think [Congress] would have chosen this "term of art" ["manipulation" as used in connection with securities markets] if it had meant to bring within the scope of § 10(b) instances of corporate mismanagement such as this, in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary.

*Id.* at 477, 97 S.Ct. at 1303.

Employing similar reasoning, the court in *Taylor v. First Union Corp.,* 857 F.2d 240,

243–44 (4th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989), dismissed shareholders' claims that defendant corporations made misleading statements by failing to disclose discussions of a proposed merger. The court noted:

> federal securities law was not intended to provide a federal forum for every intracorporate squabble or to substitute for the more general state claims.... The securities law does not authorize and its goals are not furthered by the scrutiny of the background of every factional struggle among directors or shareholders simply because the sale of stock happens to have taken place.

*Id.* at 246 (citations omitted).

Furthermore, Plaintiffs may not attempt to circumvent the rule announced in *Santa Fe* by crafting an argument that a corporation's failure to disclose mismanagement constitutes a federal securities claim. This bootstrapping argument was rejected in *Biesenbach v. Guenther:*

> *Santa Fe* made clear that absent deception, misrepresentation, or nondisclosure a breach of fiduciary duty does not violate the statute or Rule. Appellants believe that the misrepresentations and omissions that occurred in this case were: 1) the misleading statements by defendants that the transactions were in the best interest of the shareholders and 2) the defendants' failure to disclose the true purpose behind the activities. In effect, appellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the Act. We refuse to adopt this approach which would clearly circumvent the Supreme Court's holding in *Santa Fe.*

588 F.2d 400, 402 (3rd Cir.1978) (citations omitted). *See also Kas v. Financial General Bankshares, Inc.,* 796 F.2d 508, 513 (D.C.Cir. 1986) ("[A] plaintiff may not bootstrap a claim of breach of fiduciary duty into a federal securities claim by alleging that directors failed to disclose that breach of fiduciary duty. This is true even though knowledge that an officer or director had actually breached his fiduciary duty might well satisfy the materiality requirement that the omitted or misstated fact be likely to 'have assumed actual significance in the deliberations of the reasonable shareholder'") (citations omitted).

Courts have held that the securities laws do not obligate defendants to reveal the culpability of their activities or their impure motives for entering a transaction. *See Panter v. Marshall Field,* 646 F.2d 271, 278–81, 287–89 (7th Cir.) (shareholder cannot bootstrap breach of fiduciary duty claim into a § 10(b) action by alleging nondisclosure of culpability), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). To hold otherwise " 'would be to eviscerate the obvious purpose of the *Santa Fe* decision, and to permit evasion of that decision by artful legal draftsmanship.' " *Id.* at 289, *quoting, Hundahl v. United Benefit Life Ins. Co.,* 465 F.Supp. 1349, 1359 (N.D.Tex.1979).

In the instant case, this Court is persuaded that Plaintiffs have similarly attempted to circumvent *Santa Fe* by arguing Dominion's failure to disclose mismanagement constitutes a claim under the federal securities laws. Accordingly, their claims must fail. Plaintiffs' reliance on *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 282 (3rd Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), and *Longman v. Food Lion, Inc.,* C.A. No. 92CV00696, 1994 WL 686624 (D.N.C. March 16, 1994) (Mem. Opinion) is misplaced. Unlike the instant case, the plaintiffs in both *Shapiro* and *Food Lion* alleged material and specific facts showing that certain public statements made by the defendants were indeed false. Unlike these cases, the instant matter, at most, concerns nothing more than mere internal management disputes. Indeed, the quote from the Merrill Lynch analysts, which is relied upon by plaintiffs, supports this conclusion:

> [D]ue to apparent **internal disagreements** between senior officials as to **corporate strategy** ... discussions with management have revealed that a rift exists at senior management levels regarding the correct balance between the non-utility and utility businesses.... In short, we feel that the turmoil being experienced in the company's offices could take management's focus off the day to day operations of the business.

Complaint, § 43, *quoting* Merrill Lynch Analyst (emphasis added). Based on Plaintiffs' pleadings and arguments in response to Defendants' motion to dismiss, the Court is convinced that the alleged omissions simply do not fall within the class of "material" nondisclosures which might otherwise escape the rules set forth in *Santa Fe* and its progeny.

## IV

■ Although the above conclusions properly dispose of Plaintiffs' cases, in an effort to dissuade future strike suits and to underscore the sheer futility of the instant matter, this Court additionally notes that Plaintiffs' allegations have been stated with such vagueness and ambiguity that they fail to meet the particularity requirements demanded in securities fraud cases.

Because claims under Section 10(b) and Rule 10b–5 involve allegations of fraud, the complaint must satisfy the requirements of Federal Rules of Civil Procedure 9(b), which provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

*See generally Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir.1993); *Melder v. Morris,* 27 F.3d 1097, 1100 (5th Cir.1994) (Rule 9(b) applies equally to claims under the 1933 Act when claims are grounded in fraud rather than negligence).

■ The particularity requirement is (1) to provide defendants with fair notice of plaintiff's claim; (2) to protect defendants from harm to their reputation or good will; and (3) to reduce the number of nuisance or "strike" suits. *Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228, 232 (D.Md.1991). *See also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 740, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975) ("in the field of federal securities laws governing disclosure of information ... [t]he very pendency of the lawsuit may frustrate or delay normal business activity of the defendant which is totally unrelated to the lawsuit").

■ To satisfy "the circumstances constituting fraud" element of Rule 9(b) in a federal securities case, a plaintiff must plead who, what, when, where and how. *See Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). *See also Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1278 (D.C.Cir.1994) (under the fraud provisions of Federal Rules of Civil Procedure, plaintiffs must make particular allegations of the time, place, and contents of the allegedly false statements, the fact misrepresented and what was retained or given up as a consequence of the fraud).

Mindful that the Court in *Poller v. First Virginia Mortgage and Real Estate Investment Trust,* Fed.Sec.L.Rep. (CCH) § 96,564, 94,350, 1978 WL 1114 (E.D.Va.1978), was unwilling to adopt the stringent pleading requirements of the Second Circuit in securities fraud actions, this Court nevertheless holds that the plaintiffs' allegations in the case at bar fail to meet the particularity requirements of Rule 9(b). The following is a mere sampling of the myriad of vague and conclusory allegations contained in Plaintiffs' complaints:

- "**suggestions** in 1989 that Bill Stewart be replaced as head of our nuclear department"

- "making **inappropriate and critical** remarks about Power Co. officers to *peer* officers ..."

- "in **many instances,** completely ignoring the normal management chain of command ..."

- "use of Power Co. personnel **in a way that violated the spirit,** if not the letter, of the 1986 SCC Order ..."

- "use of Paul Bonavia as a **"spy"** in the Power Co. organization ..."

- "studying mergers with other utilities without the **proper** involvement of Power Co."

- "placement of the directors that are **personally committed** to him on the DRI Board and on important committees"

- "use of financial and other data in presentations to employees, shareholders, and the financial community that gave,

at best, a **misleading picture** of company performance"[3]

*See* Complaint, § 21 (emphasis added).

■ Although the Court recognizes that Rule 9(b) must be read in conjunction with Rule 8, which contains the "notice" pleading provisions of the federal rules, *Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 865–66 (E.D.Va.1980), a court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). Nor must the court accept legal conclusions cast in the form of factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).[4]

**V**

Section 20(a) of the 1934 Act provides: Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C.A. § 78t(a).

■ Plaintiffs' Section 20(a) claim for controlling person liability must fail since the Court finds there is no underlying liability under some provision of the 1934 Act. *See In re Verifone Sec. Litigation*, 11 F.3d 865, 871–72 (9th Cir.1993) (noting that if plaintiffs have failed to state a predicate claim under

the 1934 Act, their Section 20(a) claim must also be dismissed); *see also Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 279 (3rd Cir. 1992) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

**VI**

■ Section 11 of the 1933 Act, provides that any signer, officer of the issuer, or underwriter may be held liable for a registration statement containing "an untrue statement of a material fact or [omitting] to state a material fact ... necessary to make the statements therein not misleading...." 15 U.S.C.A. § 77k. Section 12(2) of the 1933 Act, establishes liability for those persons who sell a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading...." 15 U.S.C.A. § 77l (2). Both sections have been alleged by the Plaintiffs in the original *Weill v. Dominion* case, but not in *Gregory v. Dominion.*

Plaintiffs' claims under Sections 11 and 12(2) of the 1933 Act must fail. As noted above, Plaintiffs have failed to allege facts showing that the misstatements or omissions were "material," and both sections require such a showing.

**VII**

■ In anticipation of defeat, Plaintiffs have requested leave to file amended pleadings under Federal Rules of Civil Procedure 15(a) should the Court grant Defendants' Motion to Dismiss in whole or part.

Rule 15(a) states leave to amend "shall be freely given when justice so requires." *See*

---

**3.** The last two "material facts," although mentioned briefly in Plaintiffs' Complaint as part of a conversation between officers of Dominion and Virginia Power, are not claimed to be "material facts" in Plaintiffs' Brief. Nevertheless, this Court includes them as part of its discussion to once again emphasize the futility of Plaintiffs' Complaint *in toto.*

**4.** The only allegation plead with any particularity is Plaintiff's allegation that "[Defendant] Capps had involved himself in Virginia Power's contract negotiations with CSXT." However, any claims based on this alleged violation is barred by the statute of limitations. *See Lampf v. Gil-*

bertson, 501 U.S. 350, 359–61, 111 S.Ct. 2773, 2780–81, 115 L.Ed.2d 321 (1991) (applying three-year statute of repose to 10(b) and 10b–5 claims); 15 U.S.C.A. § 77m ("In no event shall any such action be brought to enforce a liability created under section 77k or 77l (1) of this title more than three years after the security was bona fide offered to the public, or under section 77l (2) of this title more than three years after the sale"). Renegotiations of the contract commenced in 1989 and Capps' alleged interference in that renegotiating process took place between April 1990 and June 1991. *See* Complaint § 19.

**340**

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the [plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'". *Id.*

For the reasons stated hereinabove, leave to amend would be futile. As such, Defendants' motion to dismiss is hereby GRANTED, and the plaintiffs' cases are DISMISSED WITH PREJUDICE. An appropriate Order shall issue.

This Court notes that the instant matter has both the looks and smell of a strike suit. As a reminder to any would-be hawks who make their livelihood by circling high over the corporate plains waiting for signs of trouble, this Court notes that it will not tolerate being used as a forum for the feeding frenzy of opportunistic shareholders and their lawyers.