Charles KOWAL, et al., Appellants,

v.

MCI COMMUNICATIONS
CORPORATION, et
al., Appellees.

No. 92–7127.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 19, 1993.

Decided March 1, 1994.

Steven G. Schulman, New York City, argued the cause for appellants. With him on the briefs were Herbert E. Milstein and Steven J. Toll, Washington, DC.

William O. Bittman, Washington, DC, argued the cause for appellees. With him on the brief were Frederic T. Spindel and John R. Erickson, Washington, DC.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is an appeal from a judgment of the district court for the District of Columbia dismissing a complaint under the Securities Exchange Act of 1934 and Rule 10b–5 for failure to plead fraud with sufficient particularity and for failure to state a claim upon which relief could be granted. Plaintiff-appellants, who claim to be members of a class of individuals who purchased MCI common stock from January 30, 1990 to November 15, 1990, sued defendant-appellees MCI Communications Corp. ("MCI") and several of its directors and officers. The complaint alleged that during the putative class period, MCI made statements of optimism and projections of future financial performance which were false and misleading because the company failed to disclose certain competitive pressures and the negative impact that MCI's merger with Telecom U.S.A. would have on its future financial performance. Plaintiffs claimed that MCI's projections of future financial performance lacked a reasonable basis when made because the company knowingly or recklessly disregarded the impact these factors would have on the accuracy of its projections. Because the complaint failed to satisfy FED.R.CIV.P. 9(b) and 12(b)(6), the district court properly ordered dismissal and did not abuse its discretion in denying leave to amend. We therefore affirm.

## I. BACKGROUND

■ We accept as true the following facts set out in plaintiffs' complaint for the purposes of this appeal. *See Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979). Defendant-appellee MCI is a Delaware corporation with its headquarters in Washington, D.C. The company is publicly-held. Its shares trade over-the-counter on the NASDAQ's National Market System. During the putative class period, MCI operated as the second-largest provider of long-distance telephone service in the United States. At that time, American Telephone and Telegraph Co. ("AT & T") controlled 64–70 percent of the long-distance market, compared to MCI's 13–15 percent share. Telecom U.S.A. ("Telecom") was the nation's fourth largest long-distance provider until April 8, 1990, when

MCI agreed to merge with the company by acquiring all outstanding shares of its stock at a total price of $1.25 billion. To finance the transaction, MCI borrowed approximately $1 billion from a bank group, increasing its debt to equity ratio of 1.12-to-1 on December 31, 1989 to 1.56-to-1 on September 30, 1990. The merger between MCI and Telecom was completed in August, 1991.

For the past decade, MCI has reported nearly uninterrupted improvement in its revenues, earnings, and earnings per share. This solid historical performance was capped with record earnings and a 20% increase in revenues in 1989. The company continued to report year-to-year gains in its first quarter ended March 31, 1990; its second quarter ended June 30, 1990; and its third quarter ended September 30, 1990. However, after the stock market closed on November 15, 1990, MCI announced that it was consolidating its seven regional divisions into four, that it was restructuring operations and could reduce its workforce 6% nationwide in the following six months to reduce expenses, and that it expected revenue growth in the fourth quarter to be "flat" compared to the prior quarter if existing trends continued. The company also acknowledged that restructuring and merger costs would constrain growth in the next several quarters, and that AT & T's aggressive marketing was eroding its market share gains in the residential and small-to-medium sized business markets. The day following the announcement, the price per share of the company's common stock dropped from $29.99 per share to $22.62 at the close of trading.

On November 19, nine shareholders filed this lawsuit as a class action in the United States District Court for the District of Columbia, alleging that MCI and its management had engaged in securities fraud. *See Kowal v. MCI Communications Corp.*, No. 90–2862 (D.D.C. filed Nov. 19, 1991). On February 19, an amended complaint was filed by fourteen named plaintiffs, asserting claims against MCI and two of its senior officers under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 (1993) (collectively "Rule 10b–

5"). The complaint alleged that between January 30, 1990 and November 15, 1990, MCI made certain optimistic statements and projections of future earnings, revenues and sales which were false and misleading, thereby artificially inflating the price of MCI common shares. The principal statements that the complaint alleged to be actionable under Rule 10b–5 included the following:

- On January 30, 1990, then-Chief Financial Officer Daniel F. Akerson told the Dow Jones Newswire that MCI expected revenues to increase between 20–30% in 1990, and expected traffic volume to increase by more than 25%. On January 31, Akerson told *The Washington Times* that the company was "very optimistic about our industry and our ability to take market share," and that MCI expected to gain an additional 2% of the long-distance market in 1990.

- On February 21, 1990, Akerson and Burt C. Roberts, MCI's President and Chief Executive Officer, told *Reuters* that MCI's growth in 1990 would outpace the industry, and that they anticipated revenues of about $8 billion and earnings growth of about 30% in 1990. Roberts further stated that the company could win as much as 20% of the long-distance market in five years. Akerson further stated that MCI expected revenue growth of 22–25% in 1990, and earnings in the range of $2.85–$3.15 per share for the year.

- On March 28, 1990, MCI released its Annual Report to Stockholders for the year ended December 31, 1989. The Report stated that the company expected to double revenues within four years, and that the company was "equipped with every tool we need . . . to duplicate our success in the 1980s [and] . . . to go well beyond." In the MD & A section of the Annual Report, the company reported that it expected continued growth in the residential and business market segments.

- On April 9, 1990, Roberts stated in an interview reported on the newswires that the Telecom merger was "very exciting," and that "combining [MCI and

Telecom's] strengths will benefit shareholders, customers and employees alike." Roberts described the merger as a strategically important move which gave MCI an immediate 1½% gain in market share, and further stated that the cost of the merger would have no effect on the company's ability to fund growth, since the company expected to pay off the resulting debt within a couple of years.

- On April 18, 1990, in a conference call with securities analysts, Akerson stated that MCI expected sequential quarterly revenue growth of 5–6½%, and earnings of $0.64–$0.68 per share. Akerson further stated that 1990 earnings were expected to be at the high end of the $2.85–$3.05 per share range, and that second half earnings per quarter would be $0.80–$0.90 per share.

- On May 2, 1990, during a presentation to the New York Society of Securities Analysts, Akerson stated that MCI's volume would grow 25–30%, that MCI expected near-term growth twice that of the industry, and that it continued to anticipate earnings per share of approximately $3.00 for 1990.

- At the May 7, 1990 annual meeting, MCI's decision to declare a dividend was described as "an expression of the company's financial strength," "a vote of confidence in its long-term prospects," and a sign of MCI's "fundamental strength."

- On August 29, 1990, MCI stated in a meeting with analysts that the company expected revenue growth of approximately 15–20%, or twice that of the industry.

- On October 18, 1990, MCI's current Chief Financial Officer O. Gene Gabbard stated that taking market share from AT & T was not "any tougher right now, and maybe even a little easier than it was earlier this year or last fall."

Appellants contend that MCI's statements regarding its future prospects were false and misleading because the company did not disclose the following "facts":

- that MCI's competitive position was deteriorating due to a shift from pricing to marketing in the industry;

- that MCI's operating margins were facing increasing pressure as the company was forced to respond to competitors' intensive marketing campaigns with dramatic increases in its own sales and marketing outlays;

- that MCI's increased expenditures on sales and marketing were inadequate to maintain its prior revenue and market share growth rate, particularly in the residential and general business markets;

- that the debt from the Telecom acquisition combined with MCI's large debt from its rapid expansion created a very heavy debt load that deprived the company of badly needed funds for sales and marketing;

- that the difficulty in integrating Telecom's workforce was seriously interfering with MCI's sales and marketing efforts, especially in the general business sector, and was impairing the company's ability to obtain new customers and retain old ones;

- that Telecom's customers were confused and concerned about the MCI takeover and were particularly susceptible to rivals' marketing campaigns and were leaving Telecom in significant numbers; and

- that MCI's cumbersome management structure was impeding its ability to react timely and effectively to changes in competitive conditions, and MCI would soon need to engage in a costly restructuring of its operations.

Appellants alleged that the company's numerous projections and statements of optimism lacked a reasonable basis when made because MCI knowingly or recklessly disregarded these factors in making their predictions of future financial performance.

On March 21, 1991, the defendants moved to dismiss the complaint under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. On May 19, 1992, the district court granted the motion. Because it viewed much of the information allegedly omitted as negative characterizations of disclosed corporate events, general industry conditions, or the activities of MCI's competitors, the court

dismissed many of the plaintiffs' allegations on the ground that the company had no legal duty to disclose such information. The court dismissed the remaining allegation that MCI failed to disclose that Telecom's customers were switching to AT & T following the merger because the complaint contained no factual information from which to infer fraud.

Appellants challenge the district court's decision to dismiss the complaint, contending that they have stated a claim under Rule 10b–5, met all pleading obligations under Rule 9(b), and in any case should have been permitted to amend their complaint if it was found to be inadequate on either of these grounds.

## II. ANALYSIS

### A. *Rule 12(b)(6)*

▬ To state a claim for securities fraud under Rule 10b–5, a plaintiff must allege that the defendant knowingly or recklessly made a false or misleading statement of material fact in connection with the purchase or sale of a security, upon which plaintiff reasonably relied,[1] proximately causing his injury. *See, e.g., Zoelsch v. Arthur Andersen & Co.,* 824 F.2d 27, 31 (D.C.Cir.1987). We review de novo the dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *See Yamaha Corp. v. United States,* 961 F.2d 245, 253–54 (D.C.Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993).

▬ The complaint should not be dismissed unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *See Schuler v. United States,* 617 F.2d at 608 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101– 02, 2 L.Ed.2d 80 (1957)). To that end, the complaint is construed liberally in the plaintiffs' favor, and we grant plaintiffs the benefit of all inferences that can be derived from the

facts alleged. *Id.* 617 F.2d at 608. However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).

Appellants did not allege and do not contend on appeal that MCI misrepresented historical data about the company's financial performance, but base their claim of securities fraud entirely on certain forward-looking statements of optimism and projections that the company voluntarily disclosed to the market. We have not previously examined the actionability of such statements under Rule 10b–5 or set out plaintiffs' obligations in pleading such claims. As a sister circuit has observed, "the matter of whether and under what circumstances predictions are actionable is today a complicated and evolving area of securities law." *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 203 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Nonetheless, caselaw in other circuits sheds considerable light on the allegations necessary to state a claim for securities fraud based on misleading projections.

Financial projections and generalized statements of optimism represent management's opinion of how the company is expected to perform within a defined time frame. *See Capri Optics Profit Sharing v. Digital Equipment Corp.,* 950 F.2d 5, 10 (1st Cir. 1991). Such projections are not guarantees of future financial performance, nor are they understood as such by reasonable investors. *See Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir.1993); *In re Verifone Sec. Litig.,* 784 F.Supp. 1471, 1481 (N.D.Cal.1992), *aff'd,* 11 F.3d 865 (9th Cir.1993). Instead, knowing the inaccuracy inherent in forecasting, investors generally opt to use or disregard predic-

---

**1.** The plaintiff-appellants do not allege direct reliance on MCI's alleged misstatements and omissions. Instead, they base their claims on a fraud-on-the-market theory, which presumes that in an efficient securities market all publicly available information regarding a company's prospects has been reflected in its shares' price. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 241–42, 108 S.Ct.

978, 988–89, 99 L.Ed.2d 194 (1988). In such cases, an allegation of direct reliance is not necessary, since the investor is presumed to have relied on the integrity of the shares' price.

This court has not previously passed on the viability of the theory and sees no occasion to do so here, as plaintiffs' complaint is inadequate on a number of grounds.

tions by the corporation only after considering the predictions' value in light of other valuations derived by independent market professionals from historical data disclosed by the corporation. *See In re Verifone*, 784 F.Supp. at 1482–83.

■ Statements of opinion or forward-looking statements such as projections, estimates or forecasts are considered "statements of fact" for the purposes of the securities laws. *See Isquith*, 847 F.2d at 203; *cf. Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, ——, 111 S.Ct. 2749, 2757, 115 L.Ed.2d 929 (1991). As such, while a company is generally under no obligation to disclose its expectations for the future to the investing public, *see* Regulation S–K, Item 303, Instr. 7, 17 C.F.R. § 229.303 (1993), if the company chooses to volunteer such information, its disclosure must be full and fair, and courts may conclude that the company was obliged "to disclose additional material facts ... to the extent that the volunteered disclosure was misleading...." *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 641 n. 17 (3d Cir.1989). *See also Panter v. Marshall Field & Co.*, 646 F.2d 271, 292 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

■ The " 'only truly factual elements involved in a projection are the implicit representations that the statements are made in good faith and with a reasonable basis.' " *Isquith*, 847 F.2d at 204 n. 12 (quoting B. Hiler, *The SEC and the Courts' Approach to Disclosure of Earnings Projections, Asset Appraisals, and Other Soft Information: Old Problems, Changing Views*, 76 Md. L.Rev. 1114, 1123 (1987)). Accordingly, projections and statements of optimism are false and misleading for the purposes of the securities laws if they were issued without good faith or lacked a reasonable basis when made. *See In re Trump Casino Sec. Litig.*, 7 F.3d 357, at 371 (3d Cir.1993); *Roots Partnership v. Land's End, Inc.*, 965 F.2d 1411, 1417 (7th Cir.1992); *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1040 (6th Cir. 1991); *Isquith*, 847 F.2d at 203–04. *See also In re Apple Computer Sec. Litig.*, 886 F.2d

1109, 1113 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

■ The district court did not hold that projections and statements of optimism are not actionable under the federal securities laws, but did conclude that most of misstatements and omissions alleged in the complaint did not state a claim because MCI had no duty to disclose the information in question.[2] Petitioners contend that the district court analyzed their complaint under the wrong legal theory, and urge us to conclude that the various misrepresentations and omissions alleged in the complaint state a claim for the purposes of FED.R.CIV.P. 12(b)(6).

We agree with the district court that many of plaintiffs' allegations called for pejorative characterizations of disclosed factual matters. *See, e.g., Kowal v. MCI Communications Corp.*, 1992 WL 121378, *2, No. 90–2862, slip op. at 11 (D.D.C. May 20, 1992) (allegations claimed company failed to disclose that MCI's competitive position was "deteriorating;" funds were "insufficient" to compete "effectively;" AT & T placed "great pressure" on MCI). Since the use of a particular pejorative adjective will not alter the total mix of information available to the investing public, *see Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983, such statements are immaterial as a matter of law and cannot serve as the basis of a 10b–5 action under any theory. *See, e.g., In re Trump Casino Sec. Litig.*, 7 F.3d 357, 374; *Goldberg v. Meridor*, 567 F.2d 209, 218 n. 8 (2d Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978); *Hershey v. MNC Financial, Inc.*, 774 F.Supp. 367, 372 (D.Md.1991); *In re RAC Mortgage Inv. Corp. Sec. Litig.*, 765 F.Supp. 860, 864 (D.Md.1991).

## B. *Rule 9(b)*

Appellant's remaining allegations, which assert that MCI's projections and statements of optimism lacked a reasonable basis when made, were properly dismissed since plaintiffs failed to plead fraud with the degree of

---

**2.** We expressly note that we are not adopting the proposition that a lack of duty to disclose negates the statement of a claim for relief for the making of a false statement.

particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

We review de novo dismissal under Rule 9(b) for failure to plead fraud with particularity. *See Wool v. Tandem,* 818 F.2d 1433, 1439 (9th Cir.1987). In so doing, "all the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party ... [and] it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Id.* (citations deleted).

Rule 8 of the Federal Rules of Civil Procedure states that a claim for relief should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," but Rule 9(b) also requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud ... shall be stated with particularity." FED.R.CIV.P. 9(b). Reading these two provisions in conjunction "normally ... means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States v. Cannon,* 642 F.2d 1373, 1385 (D.C.Cir.1981) (quotation deleted), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982).

However, where plaintiffs seek to base a claim of securities fraud on false and misleading projections or statements of optimism, their complaint must also plead sufficient facts that if true would substantiate the charge that the company lacked a reasonable basis for its projections or issued them in less than good faith. *See Roots,* 965 F.2d at 1419 (plaintiffs bear "the burden of pleading sufficient facts on both the 'reasonable basis' and 'good faith' issues"); *In re Trump Casino Sec. Litig.,* 7 F.3d 357, at 373 n. 17 (allegation that estimate of casino's value was misleading because it lacked adequate basis in fact "failed to satisfy the particularity requirement of Rule 9(b)" because it failed to allege sufficient facts suggesting unreasonableness of appraisal methodology); *Raab,* 4 F.3d 286, at 288 (allegation of fraud based on statement that "results during the remainder of 1992 should be in line with analysts' current projections" failed to satisfy 9(b), when

plaintiffs "alleged no facts showing that General Physics did not believe these statements were accurate" at the time made); *In re Verifone,* 784 F.Supp. at 1487 ("conclusory assertion that the projections ... lacked a reasonable basis" was "unsubstantiated conclusion" and "insufficient to satisfy Rule 9(b)").

Appellants contend that they have pled sufficient facts to support an inference that MCI's statements of optimism and projections lacked a reasonable basis when made. They point to the "gross deviation" between the results actually achieved by MCI and the results that MCI predicted would be achieved. We entirely reject this theory. The fact that the company's performance did not conform to that predicted supports no inference that MCI's statements lacked a reasonable basis when made. "Every prediction of success that fails to materialize cannot create on that account an action for securities fraud ...," since statements of anticipated earnings "hardly constitute[ ] a guarantee that earnings [will] be forthcoming in particular amounts...." *Raab,* 4 F.3d 286, at 288. A failure to meet projected earnings or revenues "does not in itself suggest the goal fell outside the realm of reasonable probability and therefore lacked a reasonable basis." *Roots,* 965 F.2d at 1418.

Appellants further ask us to infer that appellees were aware of undisclosed facts which seriously undermined the validity of their projections, and therefore acted in less than good faith by offering projections which they knew or should have known lacked a reasonable basis in fact. We do not find such an inference reasonable under the facts pled in the complaint. In *Roots,* the Seventh Circuit considered securities fraud allegations very similar to those in the instant case. The plaintiffs in *Roots* alleged that the defendants knew or should have known that certain operational problems at the company (including slackening demand, low-margin liquidations and declining profit margins) would preclude the company from achieving its earnings goals, and that the company's earnings projections were therefore false and misleading. The court first noted that the plaintiffs did not allege that the defendants knew or should have known that the scope of

the alleged problems was so significant that they jeopardized the possibility of attaining the company's year-end earnings goal. *See* 965 F.2d at 1419. In addition, the court observed that plaintiffs pled "the existence of these operational problems only in the vaguest terms," alleging, for instance, that the company failed to establish "adequate reserves for its excessive and outdated inventory," but nowhere alleging what the company's reserves actually were, or what they should have been. *Id.* The court accordingly concluded that plaintiffs had "failed to allege 'with particularity,' as it must under Fed.R.Civ.P. 9(b), that these operational problems undercut the reasonableness of defendants' statements such that the failure to mention these problems constituted fraud." *Id.*

■ Appellants' complaint suffers from the same defects. We conclude that they have failed to set forth sufficient facts to suggest that MCI's optimistic statements and earnings projections lacked a reasonable basis by virtue of the competitive factors and operational problems set forth in the complaint. The complaint itself describes MCI's long history of positive earnings, and the facts set out in the complaint establish that these earnings continued through three of the four reporting quarters that fell within the putative class period. A history of successful operations in many circumstances may provide management with a reasonable basis for predictions of similar prospects in the future. *See In re Craftmatic Sec. Litig.,* 890 F.2d at 642 n. 19; *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 515 (7th Cir.1989). Successful performance in the past despite the acknowledged presence of these competitive factors undermines the inference that MCI's projections and statements of optimism lacked a reasonable basis when made. *See, e.g.,* Joint Appendix at 29

(first quarter earnings gains achieved despite "aggressive competition and a much lower pricing environment"); *id.* at 41 (third quarter earnings gains achieved despite "the challenge of smoothly integrating Telecom"). Plaintiffs have pled insufficient facts to suggest that these competitive pressures had become so significant that they jeopardized the possibility of MCI attaining its projected earnings and revenues for 1991.[3] *See Roots,* 965 F.2d at 1419.

■ Plaintiffs' allegations regarding the Telecom merger also suffer from the pleading defects described above. The complaint lacks any factual specificity to support the proposition that "customers were switching, [or] for the proposition that concealment of this information equalled fraud," *see Kowal,* slip op. at 15, and plaintiffs' pleadings on information and belief did not aver that facts regarding customer switching were particularly within the defendants' knowledge, or identify the facts upon which their belief of customer switching was founded. As such, dismissing the complaint under Rules 9(b) and 12(b)(6) was proper.

### C. *Leave to Amend*

■ The district court denied leave to amend after dismissing the complaint. We review a district court's decision to deny leave to amend for abuse of discretion. *See Gaubert v. Federal Home Loan Bank Bd.,* 863 F.2d 59, 69 (D.C.Cir.1988). Appellants contend the district court abused its discretion since courts commonly grant leave to securities fraud plaintiffs to amend their complaints if such complaints were dismissed on 9(b) grounds, and deny leave to amend only under aggravated circumstances. Plaintiff-appellants also argue that the district court's failure to explain why it was denying leave to amend constituted a per se abuse of discretion.

---

3. We also observe that plaintiffs' allegations regarding these "undisclosed competitive factors" rest on information and belief. In general, pleadings on information and belief are permitted when "the necessary information lies within defendants' control." *In re Craftmatic Sec. Litig.,* 890 F.2d at 646. Nonetheless, standards for pleadings on information and belief must be construed consistent with the purposes of Rule 9(b), which attempts in part to " 'prevent[ ] the filing of a complaint as a pretext for the discovery of

unknown wrongs.' " *Nuebronner v. Milken,* 6 F.3d 666, at 671 (9th Cir.1993) (quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985)). We therefore affirm the district court's determination that pleadings on information and belief require an allegation that the necessary information lies within the defendant's control, and that such allegations must also be accompanied by a statement of the facts upon which the allegations are based. *See In re Craftmatic Sec. Litig.,* 890 F.2d at 646; *Nuebronner,* 6 F.3d 666, at 671.

While Federal Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires," a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Memorial Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C.Cir. 1993). Plaintiffs here failed to move to amend their complaint,[4] and it "could hardly have been an abuse of discretion for the District Court not to have afforded [plaintiffs] such leave *sua sponte.*" *Id.*

Plaintiffs also failed to tender a proposed amended complaint pursuant to Local Rule 108(i), which states that "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended." These unexcused procedural defaults vitiate any need for the district court to explain why permitting amendment under these circumstances was not in the interest of justice. In light of these failings and the pleading infirmities in the complaint, we conclude that the order of the district court dismissing the complaint and denying leave to amend should be affirmed.

*It is so ordered.*

---

4. These failures are particularly notable in light of the fact that plaintiffs had thirteen months from the filing of the motion to dismiss until the district judge rendered his decision.