Carolyn BROOKS–MILLER, Plaintiff,

v.

Gordon R. ENGLAND Secretary of the United States Navy, Defendant.

No. Civ.02–0888 RJL.

United States District Court, District of Columbia.

Aug. 18, 2004.

Lisa Lyons Ward, Ellicott City, MD, for Plaintiff.

Wyneva Johnson, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

The plaintiff, Carolyn Brooks–Miller ("the Plaintiff"), brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for declaratory and injunctive relief, and damages against defendant, Gordon R. England, Secretary of the Navy ("Defendant" or "the Navy"), on theories of hostile work environment, disparate treatment, and reprisal, each arising from racially discriminatory incidents alleged to have occurred during the plaintiff's employment with the Navy. Before the Court is the Navy's motion to dismiss the claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment. For the following reasons, the Court GRANTS the Navy's motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## FACTUAL BACKGROUND

The plaintiff is an African–American female who has been employed with the Naval Sea Systems Command ("NAVSEA") since June of 1989. Compl. ¶ 3; Pl. Opp. 1. Plaintiff began her employment with NAVSEA as a personnel assistant, level GS–203–7, and appears to have remained at this position until she was transferred to the front desk of that office on September 22, 2000. Compl. ¶ 16; Pl. Opp. 1. From June of 2000 through the plaintiff's reassignment that September, Marsha Arrington ("Arrington") served as plaintiff's team leader. Def. Mot. to Dismiss 3. William McCafferty and Richard Bowers also served as the plaintiff's supervisors during her employment with NAVSEA. *Id.*

The claims in this case arise from allegedly discriminatory conduct engaged in by Arrington, an alleged loss of promotional opportunities following the plaintiff's reassignment, and alleged retaliatory acts taken against the plaintiff for her involvement in the EEOC process.

The plaintiff bases her discrimination in part on a series of incidents, beginning in July of 2000, involving Arrington. *See* Compl. ¶¶ 7–18. The plaintiff alleges the following incidents: (1) on July 13, 2000, Arrington inappropriately criticized the plaintiff during a meeting, and also addressed the plaintiff in an inappropriate and demeaning manner; (2) on August 1, 2000, Arrington yelled at the plaintiff; (3) on August 29, 2000, Arrington, referring to the plaintiff, stated, "you never know how to take her"; (4) on September 21, 2000, Arrington again yelled at the plaintiff; (5) on September 22, 2000, Arrington made a derogatory remark about the plaintiff's phone ringing during a meeting; and (6) Arrington, referring to the plaintiff's recent arrival, stated, "great, just what we needed, another black woman in the office." *Id.* at ¶¶ 8–10. The plaintiff alleges that her supervisors took no disciplinary action when informed of Arrington's racially inappropriate remark. *Id.* at ¶ 11.

The plaintiff further alleges that she was denied promotional opportunities afforded to other employees outside of her protected race class. *Id.* at ¶¶ 13–14. Specifically, the plaintiff alleges that she was not given an opportunity to enter Navy's Upward Mobility Program ("UMP"), a program fostering career development. *Id.* at ¶ 13. The plaintiff alleged in her complaint that Ada Palmer, a white co-worker, was promoted to Management Analyst, level GS–7/9/11/12, through the UMP. *Id.* at ¶ 14. However, the plaintiff later alleged in her opposition that, instead of being unfairly disadvantaged when Palmer

was given promotional opportunities not available to the plaintiff, she was unfairly disadvantaged when Palmer was given advance notice of the vacancy in the Management Analyst position. Pl. Opp. 20.

The plaintiff alleges that she initiated the informal Equal Employment Opportunity Commission ("EEOC") process on August 9, 2000. Compl. at ¶ 5. On September 22, 2000, the plaintiff alleges that she was reassigned to front desk duties despite her status as the most senior personnel assistant in the office and having the most personnel experience in classification and staffing of any assistant in the office. *Id.* at ¶¶ 16–17. The EEOC completed its informal investigation on October 4, 2000, at which point it issued a Notice of Final Interview ("NOFI"). Def. Mot. to Dismiss 6. The plaintiff filed a formal complaint with the EEOC on October 18, 2000. *Id.* The EEOC began a formal investigation into the matter on October 31, 2000. *Id.* at 6–7. The plaintiff moved to amend her complaint to include charges of retaliation on January 2, 2001, which the EEOC accepted on February 1, 2001. *Id.* at 7. The EEOC completed its formal investigation of the plaintiff's claims sometime prior to June 18, 2001, when the plaintiff requested a hearing. *Id.* She subsequently withdrew her request for a hearing and indicated she intended to file an action in district court. The EEOC Administrative Judge dismissed her case based on this representation. *Id.*

## DISCUSSION

### I. *Standard of Review*

■ The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. U.S. Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

### II. *Title VII Claims*

The plaintiff seeks relief under Title VII based on theories of hostile work environment, disparate treatment, and reprisal, arising from her allegations that she was discriminated against because she is an African–American. The Navy moves to dismiss all claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The Navy also moves under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction the plaintiff's claims of reprisal and disparate treatment, to the extent that they relate to promotional opportunities, on the grounds that the plaintiff has failed to exhaust administrative remedies.[1]

### A. Hostile Work Environment

■ The plaintiff asserts in Counts I and II that she suffered "severe and perverse harassment" as a result of certain

---

1. Although the Navy indicates at the outset of its motion that it also seeks dismissal of the plaintiff's disparate treatment claim under Rule 12(b)(1) based on a failure to exhaust administrative remedies, Def. Mot. to Dismiss 1, it fails to adequately address this argument in its pleadings. As there is no indication in the record that plaintiff failed to raise the issue of disparate treatment in her EEOC proceedings, the Court rejects this argument as a basis for dismissing the claim.

alleged acts occurring in her office and that such conduct constituted "a prohibited hostile work environment." Compl. ¶¶ 8, 11. However, even accepting her factual allegations as true, which the Court must, the plaintiff cannot sustain her hostile work environment claim. To establish a *prima facie* case of hostile work environment, the plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her race; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it. *Lester v. Natsios*, 290 F.Supp.2d 11, 22 (D.D.C.2003).[2]

■ However, mere abusive behavior in itself is not actionable. *See Barbour v. Browner*, 181 F.3d 1342, 1347–48 (D.C.Cir. 1999). Instead, to be sufficiently "hostile" under the auspices of a Title VII hostile work environment claim, the workplace must become permeated "with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* Random, or intermittent, offensive remarks are not commonly recognized as being severe enough to constitute a hostile working environment. *See Glovinsky, v. Cohen*, 983 F.Supp. 1, 4 (D.D.C.1997); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Similarly, "casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action"

under Title VII. *Bundy v. Jackson*, 641 F.2d 934, 943 n. 9 (D.C.Cir.1981). "[S]tandards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). This high threshold serves to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'." *Id.*

■ Instead, the alleged harassment must be so severe or pervasive that it has the effect of altering the terms, conditions, or privileges of employment. *Barbour*, 181 F.3d at 1347–48. In determining whether the alleged harassment rises to this level, courts should consider: (1) the frequency of the harassing conduct; (2) its severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Lester*, 290 F.Supp.2d at 22.

■ The plaintiff's hostile work environment claim cannot be sustained because, in addition to failing to allege how Arrington's conduct constitutes "severe and pervasive" behavior, the plaintiff also fails to suggest why she believes the alleged harassment occurred on account of her race, and how the harassment affected a term, condition, or privilege of her employment. Even if the plaintiff could establish all of the facts alleged in her complaint,

---

**2.** The plaintiff is not required to "plead law or match facts to every element of a legal theory" in her complaint." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir. 2000) (citing *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000)). However, her pleading must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Courts are not precluded from examining the plaintiff's *prima facie* case as the dismissal stage because it allows the Court to determine whether the plaintiff will ever meet his initial burden. *Rochon v. Ashcroft*, 319 F.Supp.2d 23, 29 (D.D.C.2004).

the Court finds that she fails to state a claim for hostile work environment. Accordingly, the Court will dismiss Counts I and II under Rule 12(b)(6) for failure to state a claim.

## B. Disparate Treatment

■ Count III of the complaint alleges the plaintiff was the subject of disparate treatment relative to employees outside of her protected race class and that such discriminatory treatment resulted in her being denied the same opportunities as her co-workers. Compl. ¶ 13. To establish a *prima facie* case of disparate treatment, the plaintiff must show: (1) she is a member of a protected class; (2) an adverse employment action was taken; and (3) the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). As previously noted, the D.C. Circuit has held the plaintiff does not need to "plead law or match facts to every element of a legal theory" in her complaint. *Krieger*, 211 F.3d at 136. However, courts are not precluded from considering the plaintiff's *prima facie* case at the dismissal stage, *Rochon*, 319 F.Supp.2d at 29, and in this case, it is clear that the plaintiff has failed to allege sufficient facts in her complaint to sustain her claim even at that stage.

The plaintiff bases her claim on the belief that her white co-worker, Ada Palmer, was able to apply for and attain the position of Management Analyst through her membership in the Upward Mobility Program. ("UMP"). The plaintiff suggests that she was denied the opportunity to join the UMP on account of her race, and as such, received disparate treatment when it came to career advancement. However, faced with direct assertions to the contrary by the defense in their motion to dismiss, the plaintiff reformulates her legal theory to allege that she received disparate treatment when Palmer was given advance notice of the vacancy in the Management

Analyst position. Pl. Opp. 10–13. According to the plaintiff, such actions, which the plaintiff attributes to race, show that Palmer was given preferential treatment in the pursuit of promotional opportunities. *Id.*

■ Under Rule 8(a) of the Federal Rules of Civil Procedure, the plaintiff must allege sufficient facts in her pleading to give the Navy notice of the grounds upon which her claims are made. The plaintiff's apparent confusion with regard to the factual or legal basis for her disparate treatment claim undoubtedly leaves the Navy unable to determine the theory upon which the plaintiff seeks relief, and unable to mount an appropriate defense. Moreover, the Court finds that the plaintiff cannot state a viable claim for relief where the facts and allegations set forth in her complaint are contradicted by her later pleadings. *See, e.g., Franklin Asaph Ltd. Partnership v. F.D.I.C.*, 794 F.Supp. 402, 404 (D.D.C.1992) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself."). Accordingly, the Court finds that Count III should be dismissed under Rule 12(b)(6) for failure to state a claim.

## C. Reprisal / Retaliation

Finally, the plaintiff asserts a Title VII reprisal claim in Count IV of her complaint. That claim is based on her lateral transfer to a front desk position on September 22, 2000, roughly 40 days after she initiated EEOC review on August 9, 2000. Compl. ¶¶ 5, 16–17.

The Navy first moves to dismiss this claim for lack of subject matter jurisdiction under Rule 12(b)(1) because the plaintiff has failed to exhaust administrative reme-

dies. Section 1614.106(d) of the applicable EEO regulation provides that "a complainant may amend a complaint at any time prior to the *conclusion* of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d) (emphasis added). In its pleadings, the Navy asserts that the informal investigation terminated on October 4, 2000, and as such plaintiff's subsequent amendment was in noncompliance with § 1614.106. Def. Reply 6. However, the Navy fails to acknowledge that the formal investigation process continued well into the next year. The EEOC's formal investigation was ongoing at the time of the plaintiff's amendment, and does not appear to have ended until sometime between February and June of that year. Def. Mot. to Dismiss 7. Moreover, the EEOC accepted the amendment. *Id.* Accordingly, since the plaintiff's amendment on January 2, 2001 occurred while the EEOC's investigation was ongoing, she has appropriately exhausted her administrative remedies and is in compliance with section 1614.106.

■ Jurisdictional issues aside, however, the plaintiff has failed to state a claim upon which relief may be granted. To establish a *prima facie* case of unlawful retaliation, the plaintiff must show: (1) that she engaged in statutorily protected activity; (2) that her employer took an adverse personnel action; and (3) that a causal connection existed between the two. *Singletary v. District of Columbia*, 351 F.3d 519, 524 (D.C.Cir.2003); *Brown*, 199 F.3d at 452.

Once again, the plaintiff has failed to allege sufficient facts in the complaint to put the Navy on notice of how she will proceed. The Court is under no obligation to make inferences unsupported by the facts alleged in the complaint, *Kowal*, 16 F.3d at 1276, and in the case here, where the plaintiff's pleading is woefully deficient in its factual allegations, the Court is unable to determine the nature of the her claim.

■ In a Title VII case alleging retaliation, a plaintiff bears the burden of alleging, and later establishing, that the conduct on which she bases her claims constitutes an adverse employment action. *Lester*, 290 F.Supp.2d at 20. The plaintiff must show a tangible employment action, such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Brown*, 199 F.3d at 456. "[A] transfer that does not involve a demotion in form or substance cannot rise to the level of a materially adverse employment action." *Id.* Indeed, our Circuit Court held—

[A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Id.* at 457. Discharge, demotion, or undesirable reassignments are all examples of tangible employment actions for which an employee may bring suit under Title VII. *Id.*

■ Here, the plaintiff barely alleges that her transfer to front desk duties constitutes an adverse employment action. Compl. at ¶ 18. Her mere assertion that the transfer "diminished [her] future promotional opportunities" and "further remind[ed] plaintiff that promotions and / or awards are not based upon merit and / or qualifications" does not sufficiently describe any adverse effects of her transfer. *Id.* In particular, the plaintiff fails to note

any changes in employment status, necessary skills, job functions, or compensation levels. This Court is left with no plausible explanation as to why the plaintiff considers this to be an adverse employment decision, or why such transfer would diminish her promotional opportunities.

Moreover, the plaintiff fails to allege facts that would support a causal connection between her reassignment and her EEO activity in August 2000. As the plaintiff has failed to allege sufficient facts to put the Navy or the Court on notice of the basis upon which she will proceed in her claim, the Court will also dismiss Count IV under Rule 12(b)(6).

### ORDER

For the reasons set forth above, it is this 18th day of August, 2004, hereby **ORDERED** that the Navy's motion to dismiss [# 8] is **GRANTED**; and it is further **ORDERED** that the plaintiff's complaint is dismissed without prejudice.