**BOARD OF TRUSTEES OF UNITE HERE LOCAL 25 and Hotel Association of Washington, D.C. Pension Fund, Plaintiff,**

v.

**MR WATERGATE LLC, et al., Defendants.**

**Civil Action No. 09–1760 (ESH).**

United States District Court, District of Columbia.

Jan. 6, 2010.

Daniel M. Katz, Katz & Ranzman, P.C., Washington, D.C., for Plaintiff.

Steven Siegmund Rosenthal, John David Taliaferro, Kaye Scholer LLP, Washington, D.C., for Defendants.

## *MEMORANDUM OPINION*

ELLEN SEGAL HUVELLE, District Judge.

Plaintiff Board of Trustees of Unite Here Local 25 and Hotel Association of Washington, D.C. Pension Fund (the "Fund") filed this action to collect pension plan withdrawal liability from defendants MR Watergate LLC (the "Employer") and PB Capital Corporation ("PB Capital"). The complaint alleges that the Employer is subject to outstanding withdrawal liability for its failure to make required payments to the Fund and that PB Capital is also liable for these delinquent contributions as the Employer's successor in interest.

Presently before the Court is PB Capital's Rule 12(b)(6) motion to dismiss for failure to state a claim, which, as explained herein, the Court will grant.

## BACKGROUND

In 2004 the Employer obtained a loan from PB Capital to purchase the famous Watergate Hotel (the "Hotel") in Washington, D.C. (Compl. ¶ 21.) The Employer entered into a collective bargaining agreement with Unite Here Local 25 of Washington, D.C. of the Unite Here International Union (the "Union") (*Id.* ¶¶ 1, 4), which provided, among other things, that the Employer was to make periodic contributions to the Fund. (*Id.* ¶ 16.)[1] The Employer initially made the required contributions, but on July 31, 2007, the Employer closed the Hotel and ceased contributing. (*Id.* ¶ 19.) The Fund chose not to impose withdrawal liability at that time against the Employer because the Employer indicated that it intended to resume operations at the Hotel in February 2010. (*Id.*) On June 16, 2009, while the Hotel was still closed, PB Capital notified the Employer that it had an outstanding balance of $40 million and that PB Capital was instituting foreclosure proceedings. (*Id.* ¶ 21.) On July 21, 2009, PB Capital purchased the Hotel at the foreclosure sale. (*Id.* ¶ 22.) After learning about the foreclosure proceedings, the Fund determined that the Employer had completely withdrawn and thus owed the Fund $637,855.85 in withdrawal liability. (*Id.* ¶ 24.) The Fund notified the Employer of this decision and indicated that it would accept payments in quarterly installments of $46,176.75. (*Id.*) The Employer informed the Fund that it would not pay the withdrawal liability, as it was no longer

1. As described in the complaint, "the Fund is an 'employee benefit plan' as defined in Section 3(3) of [the Employee Retirement Income Security Act] ERISA, 29 U.S.C. § 1002(3)." (Compl. ¶ 4.)

the owner of the Hotel and was being dissolved. (*Id.* ¶ 25.) Since PB Capital has become the owner, the Hotel has remained closed and it appears that PB Capital has not undertaken any steps to resume operation of the Hotel. (*Id.* ¶¶ 48–51.)

The Fund brings this action under Sections 502(a)(3) and 515 of ERISA, as amended, 29 U.S.C. §§ 1132(a)(3) and 1145, and the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1461, for collection of a delinquent withdrawal liability. The Fund names PB Capital as a codefendant, alleging that PB Capital is the Employer's "successor in interest" and is, therefore, liable for the Employer's withdrawal liability under the successorship doctrine. (Compl. ¶¶ 48–51.)

## ANALYSIS

## I. MOTION TO DISMISS STANDARD

As the Supreme Court recently held in *Ashcroft v. Iqbal:*

> [A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' *Id.* at 557, 127 S.Ct. 1955.

— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Under this standard, dismissal is required if the complaint consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor. *Maljack Prod., Inc. v. Motion Picture Ass'n of Am., Inc.,* 52 F.3d 373, 375 (D.C.Cir.1995). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

## II. WITHDRAWAL LIABILITY

When an employer who is part of a multiemployer pension fund fails to make its required contribution, the employer can be subject to "withdrawal liability" in order to " 'relieve the funding burden on remaining employers' and to 'avoid creating a severe disincentive to new employers entering the plan.' " *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323, 1328 (7th Cir.1990) (quoting House Committee on Ways & Means, *Multiemployer Pension Plan Amendments Act of 1980,* H.R.Rep. No. 96–869, Part I, at 67, 96th Cong., 2d Sess. 15, reprinted in 1980 U.S.Code Cong. & Admin. News 2918, 2935). When an employer who is subject to withdrawal liability sells its assets to another corporation, the common law rule is that the purchasing corporation does not assume the seller corporation's liabilities, including withdrawal liability. *See id.* at 1325 (citing *Travis v. Harris Corp.,* 565 F.2d 443, 446 (7th Cir.1977)). However, to relieve the hardship on Unions "where a predecessor employer is unable to fulfill its contractual obligation," courts have carved out a "successorship liability" exception to the com-

mon law rule, which provides that the purchaser of corporate assets can assume the liabilities of the purchased corporation under certain conditions. *Id.* at 1329 (internal citations omitted).

■ The D.C. Circuit uses the following nine-part test to determine whether a purchaser of corporate assets is a successor and should be subject to successor liability:

> (1) Whether the successor company had notice of the charge, (2) the ability of the predecessor to provide relief, (3) whether there has been substantial continuity of business operations, (4) whether the new employer uses the same plant, (5) whether he uses the same or substantially the same work force, (6) whether he uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working conditions, (8) whether he uses the same machinery, equipment and methods of production and (9) whether he produces the same products.

*See Sec'y of Labor, Mine Safety and Health Admin. v. Mullins,* 888 F.2d 1448, 1453–54 (D.C.Cir.1989) (citing *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1094 (6th Cir.1974)). The D.C. Circuit has not yet had occasion to apply this test to pension plan withdrawal liability, but an examination of cases from other circuits reveals that the determinative factor is whether there has been "substantial continuity of business operations" since PB Capital became the owner of the Hotel. *See, e.g., Stotter Div. of Graduate Plastics Co., Inc. v. District 65, United Auto Workers, AFL–CIO,* 991 F.2d 997, 1001 (2d Cir. 1993); *Central States, Southeast and Southwest Areas Pension Fund v. Wiseway Motor Freight, Inc.,* 2000 WL 1409825, at *5–6 (N.D.Ill.2000). Although listed as separate factors in the nine-part test, factors (4)-(9) are not usually considered as distinct elements, but are instead relevant to determining whether the "substantial continuity of business operations" element has been met. *See, e.g., Stotter,* 991 F.2d at 1001 (examining the successor's use of the same employees, equipment, products, and customers as factors in determining whether there was a "substantial continuity of identity in the business enterprise before and after [the] change" (internal quotation omitted)); *Wiseway,* 2000 WL 1409825, at *5–6 ("Substantial continuity is established where the 'new company has acquired substantial assets of its predecessors and continued, without interruption or substantial change, the predecessor's business operations.'" (internal quotation omitted)).

■ Here, the Fund argues that PB Capital is a "successor in interest" to the Employer and, as such, should be held liable for the Employer's withdrawal liability under the "successorship liability" doctrine. However, the complaint is devoid of any factual basis, as it merely alleges that:

> 49. On or about July 21, 2009, PB Capital Corporation took control of the Hotel.
>
> 50. PB Capital Corporation is continuing the Employer's business operations, such as they were.
>
> 51. By virtue of its status as a successor in interest to the Employer, PB Capital Corporation is liable for the Employer's withdrawal liability.

These allegations are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949. There are no facts to support these elements; for example, there are no allegations that PB Capital utilizes the same management, work force, equipment, or processes as were used by the Employer. The complaint against PB Capital, therefore, is nothing more than a "formulaic recitation

of the elements of a cause of action."
*Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

Moreover, taking into account the facts as alleged in the complaint, the Fund cannot, as a matter of law, prove that PB Capital is subject to successor liability. The facts establish that PB Capital, in its capacity as lender, foreclosed on real property when the debtor-Employer failed to meet its repayment obligations. At the time of foreclosure, the Hotel was not operating. After PB Capital purchased the Hotel at the foreclosure sale, it continued to not operate the Hotel. It is illogical to suggest that PB Capital substantially continued the operations of a business which had ceased prior to being acquired by PB Capital and where PB Capital took no steps to recommence operations. Substantial continuity of business operations requires the existence of factors such as use of the same facilities, the same employees, the same supervisors, and the same equipment. *See, e.g., Mullins,* 888 F.2d at 1453–54. Here, given the undisputed facts, the Fund cannot satisfy these factors. Thus, the Fund's allegations against PB Capital fail to state a cause of action for successor liability, and, therefore, the claim against PB Capital must be dismissed.[2]

## CONCLUSION

For the reasons stated above, defendant PB Capital's motion to dismiss is granted, and the claim against PB Capital is dismissed with prejudice. The remaining parties shall file a joint status report by January 18, 2010 and a telephone conference call shall be held with chambers on January 23, 2010 at 11:15 am. The parties shall jointly call the Court at that time.

---

**2.** Under the nine-part test for successor liability in the D.C. Circuit, the other two factors to be considered—prior notice of the delinquency by the successor and the ability of the predecessor to satisfy the liability—also weigh against the Fund. First, the complaint does not allege that PB Capital had prior notice of the outstanding withdrawal liability against the Employer. To rectify this deficiency, the Fund's Opposition to Defendant's Motion to Dismiss contains a declaration from John A. Boardman, Chairman of the Fund, in which he avers that he discussed the Employer's withdrawal liability with representatives from PB Capital before and after PB Capital purchased the Hotel. (Pl.'s Opp'n to Def.'s Mot. to Dismiss, Attachment 1 (Declaration of John

A. Boardman) ¶ 3.) Even if this Court were to credit this declaration for purposes of a 12(b)(6) motion to dismiss—which the Court cannot do because the declaration is not part of the complaint—prior notice alone is not sufficient under the D.C. Circuit's nine-part test to establish successor liability, especially where the successor did not actually engage in any business operations. Second, even though the Employer has no assets with which it can satisfy its withdrawal liability (Compl. ¶ 25), the Fund does not explain why as a matter of policy this burden should fall upon PB Capital, a foreclosing commercial lender who has not operated the Hotel and has no plans to do so.