**Carol A. ANDERSON, Plaintiff,**

v.

**USAA CASUALTY INSURANCE COMPANY et al.,
Defendants.**

**No. CIV.A.02–2251(RMU).**

United States District Court,
District of Columbia.

April 23, 2004.

David Hilton Wise, Lewis & Roberts, P.L.L.C., Fairfax, VA, Daniel Kent Bryson, Sandra Woods Mitterling, Lewis & Roberts, P.L.L.C., Raleigh, NC, for Plaintiff.

David F. Grimaldi, Martell, Donnelly, Grimaldi & Gallagher, Judith A. Miller, Williams & Connolly LLP, Dwight D. Murray, Jordan, Coyne & Savits, LLP Washington, DC, Kelly Hughes Iverson, Malcolm S. Brisker, Goodell, Devries, Leech & Dann, LLP, Baltimore, MD, for Defendants.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING DEFENDANT TEG'S MOTION TO DISMISS AND GRANTING THE PLAINTIFF LEAVE TO AMEND THE COMPLAINT

## I. INTRODUCTION

This toxic-tort case comes before the court on defendant The Environmental Group's ("TEG") motion to dismiss the plaintiff's claim of negligent misrepresentation pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendant TEG believes that the plaintiff's complaint is missing something important. The court agrees. Because the plaintiff fails to plead her claim of negligent misrepresentation with Rule 9(b)'s requisite particularity, the court grants defendant TEG's motion to dismiss that claim. The court, however, will not allow the sun to set on the plaintiff's claim without offering her a chance to cure her pleading deficiencies. Toward that end, the court grants the plaintiff leave to amend her complaint.

## II. BACKGROUND [1]

### A. Factual Background

In May 1999, the plaintiff entered into purchase agreements with the Millennium defendants for two newly-constructed units in the Ritz–Carlton Residences, which later were combined into one unit ("the unit"). Am. Compl. ("Compl.") ¶¶ 17–18. The plaintiff began to occupy the unit in January 2001, after which time she began experiencing "a variety of flu-related symptoms, such as nasal congestion, burning eyes and fatigue." *Id.* ¶¶ 24–25. The plaintiff maintains that she had no known history of such health problems before she resided in the unit, and that her symptoms would subside whenever she left the premises. *Id.* ¶ 25.

In February 2002, black-colored mold became visible along the walls of the unit. *Id.* ¶ 34. From February through May 2002, defendant NuChemCo, Inc. ("NuChemCo") performed air-quality tests that revealed additional mold throughout the unit. *Id.* ¶ 39. The Millennium defendants contracted defendant TEG, a purveyor of environmental investigation and remediation [2] services, to per-

---

1. For a further account of the case's background, see the court's Memorandum Opinion of September 29, 2003. *Anderson v. USAA Cas. Ins. Co.*, 218 F.R.D. 307 (D.D.C.2003).

2. Although the parties loosely use the term "remediation" throughout their submissions, they do not provide the court with its meaning. Through its own research, the court understands the term to generally describe the abatement of microbial or fungal contamination. *See LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings*, 237 F.Supp.2d 618, 629 n. 8 (D.Md.2002) (noting that remediation can include "any response, remedial, removal, or corrective action; any activity to clean up, detoxify, decontaminate, contain or otherwise remediate any Hazardous Substance; any actions to prevent, cure or mitigate any Release of any Hazardous Substance; any action to comply with any Environmental Laws or with any permits issued pursuant thereto; any inspection, investigation, study, monitoring, assessment, audit, sampling and testing, laboratory or other analysis, or evaluation relating to any Hazardous Substances").

form the remediation of mold-contaminated areas throughout the building. *Id.* ¶¶ 11, 76.

On June 25, 2002, defendant NuChemCo issued a report to the plaintiff stating that remediation of the unit was complete. *Id.* ¶ 42. In addition, a representative of defendant Millennium Partners indicated that it was safe for the plaintiff to reinhabit the premises. *Id.* Despite the green light from defendants Millennium Partners and NuChemCo, the plaintiff allegedly continued to suffer health problems upon her reoccupation of the unit. *Id.* ¶ 43. In fact, her health apparently further deteriorated as she experienced "severe headaches, blurred vision, difficulty breathing, coughing, congestion, nausea, vomiting, diarrhea, swelling and cognitive deficiencies." *Id.* ¶ 44. The plaintiff attributes her maladies to various toxic molds growing within the walls of the building as a result of "serious and reoccurring leaks and flooding" that took place during construction. *Id.* ¶¶ 74–75. The plaintiff's doctor ordered her to move out of the unit, and she has not returned since her departure. *Id.* ¶ 47.

In August 2002, the plaintiff received another report from defendant NuChemCo, this time indicating the presence of toxigenic fungi in the unit. *Id.* ¶ 50. Remediation of the plaintiff's unit continued thereafter. *Id.* ¶ 72.

## B. Procedural History

On November 14, 2002, the plaintiff filed her original complaint, premising the case on diversity jurisdiction. On June 6, 2003, she filed a motion to amend her complaint. On September 29, 2003, the court granted the plaintiff leave to file her amended complaint. *Anderson v. USAA Cas. Ins. Co.*, 218 F.R.D. 307 (D.D.C.2003). While the amended complaint alleges a host of contract, tort, and statutory claims against the defendants, it names only two claims against defendant TEG: negligence and negligent misrepresentation. Compl. ¶¶ 158–71. With respect to

her negligent-misrepresentation claim, the plaintiff contends that the defendants, including defendant TEG, falsely represented to her that the condominium building posed no health hazards. *Id.* ¶ 169. She also believes that they failed to disclose the building's severe construction defects and widespread water damage that only later became evident upon discovery of toxic mold in several areas of the building. *Id.* Consequently, the plaintiff's alleged reliance on such misrepresentations and omissions exposed her to mold contamination, which in turn caused her to suffer "serious and ongoing personal injury and property damage." *Id.* ¶ 171.

On October 9, 2003, defendant TEG filed a motion to dismiss the plaintiff's claim of negligent misrepresentation pursuant to Rules 9(b) and 12(b)(6). The court now addresses that motion.

## III. ANALYSIS

As a preliminary matter, the court must determine whether it will proceed to resolve the instant motion under Rule 9(b) or Rule 12(b)(6). Although the D.C. Circuit has recognized that a court may base dismissal on either rule, *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 (D.C.Cir.1994), defendant TEG offers no argument in support of dismissal under Rule 12(b)(6). Indeed, defendant TEG simply refers to the rule in passing while pinning the crux of its challenge on Rule 9(b)'s heightened-pleading standard. *See generally* Def. TEG's Mot. to Dismiss ("Def.'s Mot."). In addition, the plaintiff's responsive brief similarly focuses on Rule 9(b). *See generally* Pl.'s Opp'n. Accordingly, the court gives effect to the substance of the parties' arguments by analyzing the complaint through a Rule 9(b) lens.[3]

### A. Legal Standard for a Rule 9(b) Motion to Dismiss

Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P.

---

**3.** This approach will neither prejudice, nor provide an unfair advantage to either party, especially in view of the added fact that a complaint can pass muster under the Rule 12(b)(6) threshold yet fail to comply with the strictures of Rule 9(b). *See In re Rockefeller Ctr. Prop., Inc. Sec.*

*Litig.*, 311 F.3d 198, 224 (3d Cir.2002) (explaining that a Rule 9(b) dismissal may be warranted even when a Rule 12(b)(6) dismissal is not); *accord Kowal*, 16 F.3d at 1276–79 (drawing a distinction between the pleading standards of Rules 9(b) and 12(b)(6)).

9(b). Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. *Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D.D.C. Apr.7, 1992) (Lamberth, J.); *see also Kowal,* 16 F.3d at 1279 n. 3 (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)); *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir.1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (same).

■ Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C.Cir.2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981). In other words, Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (requiring the pleader to provide the equivalent of a "first paragraph of any newspaper story"). Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim. *Kowal,* 16 F.3d at 1279 n. 3.

■■ That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. *Id.* at 1278 (citing *Cannon,* 642 F.2d

at 1385); Fed. R. Civ. P. 8. Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked. *Alicke v. MCI Communications Corp.,* 111 F.3d 909, 912 (D.C.Cir.1997); *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 746 (8th Cir.2002). Additionally, while the court must take as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. *Kowal,* 16 F.3d at 1278 (citing *Wool v. Tandem,* 818 F.2d 1433, 1439 (9th Cir.1987)); *Shields,* 1992 WL 88004, at *7; *see also One–O–One Enters., Inc. v. Caruso,* 668 F.Supp. 693, 697–99 (D.D.C.1987) (Richey, J.), *aff'd,* 848 F.2d 1283 (D.C.Cir.1988) (explaining that the pleader must allege with particularity the alleged fraud to survive a Rule 9(b) motion).

■ Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend. *See Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C.Cir.1996) (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). Accordingly, the court should reserve dismissal with prejudice for "extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *Shields,* 1992 WL 88004, at *5.

## B. The Court Grants Defendant TEG's Rule 9(b) Motion to Dismiss

■ The claim at issue appears in Count XII of the plaintiff's amended complaint (hereinafter, "complaint"), which alleges that the defendants, as a whole, negligently misrepresented or withheld material facts regarding the condition of the plaintiff's unit. Compl. ¶¶ 168–71. In this diversity action, the court applies the law of the District of Columbia in defining the elements of a negligent-misrepresentation claim. *See Rogers v. Ingersoll–Rand Co.,* 144 F.3d 841, 843 (D.C.Cir.1998) (noting that the *Erie* doctrine requires federal courts for the District of Columbia to follow the decisions of the Dis-

trict of Columbia Court of Appeals, the highest court of the District of Columbia, when addressing non-procedural issues in diversity-jurisdiction cases). Although this court has previously identified case law that suggests additional elements comprising negligent misrepresentation, *e.g.*, *In re U.S. Office Prods. Co. Secs. Litig.*, 251 F.Supp.2d 58 (D.D.C.2003), current precedent lists only three elements.[4] To wit, under District of Columbia law, the plaintiff must prove: (1) a false statement or omission of fact which the defendant had a duty to disclose, (2) involving a material issue, (3) on which the plaintiff reasonably relied to her detriment.[5] *Appleton v. United States*, 2001 WL 45473, at *3 (D.D.C. Jan. 5, 2001) (Kay, M.J.) (citing *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C.1999)); *Hall v. Ford Enters. Ltd.*, 445 A.2d 610, 612 (D.C.1982).

Because a failure to satisfy the pleading requirements of Rule 9(b) would be fatal to the plaintiff's claim of negligent misrepresentation, the court first turns its attention to the complaint's supporting allegations and their level of particularity, drawing all reasonable inference in favor of the plaintiff. *Alicke*, 111 F.3d at 910–12; *Kowal*, 16 F.3d at 1278; *Cannon*, 642 F.2d at 1385; *Shields*, 1992 WL 88004, at *7, 9; *One–O–One Enters., Inc.*, 668 F.Supp. at 697–99; *Nelson v. Nationwide Mortgage Corp.*, 659 F.Supp. 611, 618 (D.D.C.1987) (Harris, J.). In pressing her claim, the plaintiff alleges that the defendants

> have repeatedly failed to properly warn plaintiff of the severe health risks associated with mold contamination in plaintiff's condominium and in the surrounding condominiums, despite having superior knowledge of numerous water intrusion problems and mold contamination, and despite having knowledge that several occupants were experiencing serious health problems in the condominium.

\* \* \* \* \* \*

> [Additionally, the defendants] have misrepresented or withheld material and significant facts from the plaintiff ... by withholding facts that the building had severe construction defects and failures, that there was much more severe water damage and contamination than was evident to the untrained eye and that toxic mold had been uncovered in many parts of the condominium residences.

Compl. ¶¶ 82, 169. The plaintiff refers to defendant TEG only a handful of times, stating that the Millennium defendants hired defendant TEG to perform remediation services on mold-contaminated areas in the building, including the plaintiff's unit. *Id.* ¶ 76. The plaintiff also claims that defendant TEG opened the walls, floors, and ceilings of surrounding units during the course of the remediation work. *Id.* ¶ 81.

■ Defendant TEG argues that these allegations fail to provide the level of particularity that is sufficient to support a claim that defendant TEG either made misrepresentations or failed in its duty to make representations to the plaintiff. Def.'s Mot. at 6. Put another way, defendant TEG submits that the complaint does not specify the alleged material misrepresentations or omissions. *Id.* In response, the plaintiff concedes that

---

4. Although defendant TEG submits that the plaintiff fails to allege the necessary elements for a claim of negligent misrepresentation, the parties fail to resolve the preliminary issue of what elements comprise a claim of negligent misrepresentation in the District of Columbia.

5. The elements of negligent misrepresentation under District of Columbia law once paralleled the elements set forth in the Restatement (Second) of Torts § 552, which are:

> (1) one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for the pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information; (2) ... the liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 991 (D.C.1980) (citing the Restatement (Second) of Torts § 552 (1977)).

her complaint fails to aver the circumstances and precise date or time of the alleged false statements or omissions, but nevertheless asserts that she has "put the defendant on notice of the claim." Pl.'s Opp'n at 7.

In applying Rule 9(b)'s heightened-pleading requirements, the court has little trouble concluding that defendant TEG presents the more convincing argument. Indeed, the plaintiff's negligent-misrepresentation claim, as presented, suffers from several flaws. Although the plaintiff has notified defendant TEG of her allegation that it made a material misrepresentation or omission on which the plaintiff detrimentally relied, this general accusation does not salvage her claim because it leaves defendant TEG clueless as to the time, place, and content of its alleged misrepresentations or omissions. *Totten*, 286 F.3d at 551–52. Indeed, the plaintiff falls short of pleading any specific allegations as to defendant TEG's conduct that would support the gravamen of her claim, advancing nothing more than what appears to be a blanket belief that the defendants as a group "misrepresented or withheld material and significant facts." Compl. ¶ 169. As noted, the complaint's sole references to defendant TEG are that it performed remediation services in the mold-contaminated areas of the building and opened the walls, floors, and ceilings of the unit and surrounding areas in the building. *Id.* ¶¶ 76, 81. Moreover, nowhere does the plaintiff put defendant TEG on notice as to any duty owed to the plaintiff, a required element for a negligent-misrepresentation claim. *See Alicke*, 111 F.3d at 912 (affirming dismissal of a complaint for failure to adequately allege all of the necessary elements for a negligent-misrepresentation claim). Accordingly, the court grants defendant TEG's motion to dismiss because the brush strokes with which the plaintiff paints her claim fail to illustrate for defendant TEG the precise misconduct with which it is charged. Fed. R. Civ. P. 9(b); *Totten*, 286 F.3d at 552; *Alicke*, 111 F.3d at 910–12; *Cannon*, 642 F.2d at 1385.

### C. The Court Grants the Plaintiff Leave to Amend

The court's task is not at an end. Having concluded that the plaintiff has failed to allege negligent misrepresentation with sufficient particularity, the court must now consider whether it should give the plaintiff an opportunity to cure her pleading deficiencies. *Firestone*, 76 F.3d at 1209. Ordinarily, when a court grants dismissal under Rule 9(b), it provides the claimant leave to amend the pleading to achieve the particularity required by Rule 9(b) and in accordance with Rule 15(a). *Id.; Shields*, 1992 WL 88004, at *5; *Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 74 (D.D.C.2002) (Walton, J.); *cf. In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (honoring the general principle that courts ordinarily deny leave to amend when amendment is futile and the pleader could never plead his claim with Rule 9(b)'s requisite particularity). Because defendant TEG is silent on this question, the court sees no reason why it should prevent the plaintiff from amending her negligent-misrepresentation claim to bring it within compliance of Rule 9(b)'s strictures. *Id.*

### IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss and grants the plaintiff leave to amend her negligent-misrepresentation claim within 30 days of today's ruling. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this *23rd* day of April 2004.