**UNITED STATES of America ex rel., Kenneth FISHER, Plaintiff,**

**v.**

**NETWORK SOFTWARE ASSOCIATES, et al., Defendants.**

**No. Civ.A.99–3095PLF/JMF.**

United States District Court, District of Columbia.

Feb. 22, 2005.

Alan Mark Grayson, Victor Aronoff Kubli, Grayson, Kubli & Hoffman, PC, McLean, VA, Ira Eliot Hoffman, The Goldstein Law Group, P.C., Pamela Joy Bethel, The O'Riordan Bethel Law Firm, LLP, Washington, DC, for Plaintiff.

Beverly A. Johnson, Phleger & Harrison LLP, Irvine, CA, Cecil Elvis Key, Jr., Dewey Ballantine LLP, Philip R. Sellinger, Venable, LLP, Robert Elijah Jordan, III, Steptoe & Johnson LLP, Aaron L. Handleman, Michael Philip Freije, Eccleston & Wolf, P.C., Washington, DC, David E. Sellinger, Grant & Eisenhofer, P.A., Wilmington, DE, Edward Parrott, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., Brian Denton West, West & Herbert, P.C., McLean, VA, Jason B. Lattimore, Greenberg Traurig, LLC, Florham Park, NJ, for Defendants.

Lydia K. Griggsby, U.S. Attorney's Office, Washington, DC, for Movant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me for discovery by Judge Friedman pursuant to LCvR 72.2(a). Currently pending and ready for resolution are three discovery motions. For the reasons stated herein, *Defendants' Motion to Stay Discovery* [# 110] is denied, *Relator's Request for Scheduling Order and Motion Under Fed.R.Civ.P. 56(f) Relating to Defendants' Motion for Partial Summary Judgment and Stay* [# 111] is granted in part and denied in part, and *Defendant Network Software Associates, Inc., A Virginia Corporation's Motion for Protective Order* [# 118] is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background

From November 23, 1993, through July 18, 1997, Network California, NetSoft, and Network Virginia were involved in the U.S. Small Business Administration ("SBA"), Section 8(a) Minority Small Business Development Program ("Section 8(a) Program"). *Third Amended Complaint and Demand for Jury Trial* ("Complaint") ¶¶ 1, 38–41. This program allows federal agencies and entities to "set aside" certain contracts for the sole benefit of the Section 8(a) Program participants. *Id.* ¶ 26.

Relator brings this suit against defendants under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Relator claims that defendants presented false claims, false statements, and false records and engaged in a conspiracy to enter into the Section 8(a) Program and obtain government contracts with little to no competition. *Id.* ¶ 1.

### B. Defendants' Motion for Partial Summary Judgment

On July 23, 2004, defendants filed a motion for partial summary judgment. While this motion is currently pending before Judge Friedman, it is necessary to refer to it in order to understand the discovery motions currently pending before me.

In their motion, defendants explain that relator's third amended complaint contains allegations that defendants made false claims and statements to enable defendants to fraudulently obtain certain contracts and transactions. These contracts and transactions include: (1) contracts that the SBA set aside for entities owned and controlled by disadvantaged persons pursuant to the SBA's Section 8(a) Program, (2) contracts through the General Services Administration ("GSA") Schedule ("GSA Schedule Sales"), (3) open-market purchase orders with the government totaling between $2,500 and $100,000 ("Small Purchases") and purchase orders valued at under $2,500 ("Micropurchases"), and (4) contracts with companies that subsequently made sales to the federal government ("Sub-contracts"). *Statement of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgment* ("Def.'s Mot. Partial Summ. J.") at 1.

Defendants explain that relator's claims stem from defendants' alleged false certifications of eligibility as a small, disadvantaged business under the Section 8(a) Program. *Id.* at 1–2. Defendants also note:

> Relator's suit does not challenge the fact that NSA was a bona fide "small business" under applicable Government regulations. Only NSA's status as a small, disadvantaged business under the Section 8(a) Program is challenged. It is undisputed that NSA was at all operative times during the Limitations Period a legitimate small business under the governing regulations.

*Id.* at 2 n. 1.

Defendants further explain that their motion for partial summary judgment is limited to relator's claims based on GSA Schedule Sales, Small Purchases and Micropurchases, and Subcontracts-not any claims based on defendants' participation in the Section 8(a) Program. Defendants acknowledge that, with regard to these three types of contracts, an entity's "small business status" is a relevant consideration under the federal regulations, but an organization's small business status is distinct from its Section 8(a) or small, disadvantaged business ("SDB") status. Defendants then argue that "[t]he rules governing these transactions during the Limitations Period establish conclusively that NSA's 8(a) or SDB status was not material to award or payment, and such status could therefore not have been a condition of payment under the FCA...." *Id.* at 11. Because FCA liability does not attach unless the violations of the law were a prerequisite to gaining a benefit from the government, and because defendants read the complaint as alleging claims based only on NSA's Section 8(a) or SDB status (not their small business status), defendants claim that the alleged violations cannot yield FCA liability. Accordingly, defendants seek a ruling by the court granting their motion for partial summary judgment and dismissing with prejudice relator's claims concerning the GSA Schedule Sales, Small Purchases and Micropurchases, and Subcontracts. *Id.* at 29.

## II. DISCUSSION

### A. Defendants' Motion to Stay Discovery

Defendants move this court for an order staying discovery until the court rules on their joint motion for partial summary judgment. Defendants contend that a stay is appropriate because, if the court grants their motion for summary judgment, many of relator's claims will no longer be at issue in this case, and the scope of discovery will be significantly limited. Defendants represent that, at the time they filed their motion to stay, there were no outstanding discovery requests and that they had already produced extensive discovery. *Statement of Points and Authorities in Support of Defendants' Motion to Stay Discovery.* ("Def.'s Mot. to Stay") at 1.[1]

### B. Relator's 56(f) Motion

Relator opposes the motion to stay and contests defendants' representation that they have met their discovery obligations. *Relator's Request for Discovery Scheduling Order and Motion Under Fed.R.Civ.P. 56(f) Relating to Defendants' Motion for Partial Summary Judgment and Stay* ("Rel.'s 56(f) Mot.") at 1, 10. Relator also states that he "requires additional discovery of facts essential to his position" and requests additional discovery under Federal Rule of Civil Procedure 56(f). *Id.* at 1. Specifically, relator seeks additional discovery regarding "whether [d]efendants' falsification of NSA's size status was 'a prerequisite to obtaining a government benefit.'" *Id.* at 3 (citing *United States ex rel. Hopper v. Anton,* 91 F.3d 1261,

1266–67 (9th Cir.1996)). Relator further argues that, "[a]lthough [d]efendants' false certifications of 'small' business status were material as a matter of law, the factual issue of the states of mind of scores of government contracting officials—*e.g.,* the GSA officials when, upon reading [d]efendants' false certifications [of small business status], they awarded NSA a Schedule contract; or agency contracting officers, when they issued purchase orders against NSA's GSA Schedule contract; or non-GSA contracting officers, when they awarded NSA non-Schedule, non set-aside contracts-obviously presents factual issues for which discovery is 'essential' to this case," and therefore relator's Rule 56(f) motion should be granted. *Id.* at 8–9. Specifically, relator seeks: (1) documents related to defendants' "small" status, (2) additional depositions that relator has not yet scheduled because he has awaited complete document production by defendants, (3) an explanation of gaps in the Bates numbering of certain documents, and (4) "copies of all invoices, contracts and bids or proposals."[2] *Id.* at 10–11.

Relator summarizes his reasons for needing additional discovery as follows:

- Defendants have egregiously avoided the undisputed evidence showing that NSA's annual receipts exceeded $30 million, [ ] which means that NSA falsely certified it was a "small business" (*see* 48 C.F.R. § 19.102);

- their motion is based on the conclusory and erroneous "say-so" of one of the *[d]efendants* that it is "undisputed" that NSA was a "small business";

1. Since filing their motion to stay, however, relator has served upon defendants additional discovery requests entitled *Relator Kenneth Fisher's Corrected Second Set of Requests for Production. Defendant Network Software Associates, Inc., A Virginia Corporation's Motion for Protective Order* ("Def.'s Mot. for Prot. Order") at 2. Defendants then filed a motion for a protective order for the same reasons they explained in their opposition to relator's 56(f) motion.

Under Federal Rule of Civil Procedure 26, "the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). It also bears emphasis that parties are only entitled to

discover matters that are relevant to the lawsuit. Fed.R.Civ.P. 26(b). The outstanding discovery requests for which defendants seek a protective order seek information that either: 1) has already been produced, or 2) relates to defendants' status as a small business, which, for the reasons explained in this Opinion, is irrelevant to the FCA claims relator has made in this litigation. Accordingly, relator's additional discovery requests are either duplicative or irrelevant, and defendant's motion for a protective order will be granted.

2. Relator states that he has identified defendant's "production deficiencies" and expects that they will be remedied expeditiously. Rel.'s 56(f) Mot. at 11.

- their motion raises, instead of narrows, material factual issues-such as the states of mind of the GSA ordering officials when, upon reading [d]efendants' false certifications, they awarded NSA a Federal Supply Schedule contract; and the state of mind of agency contracting officers, when they issued purchase orders against NSA's GSA Schedule contract;
- they have produced few, if any, of the documents relating to NSA's false certifications that it was a "small business concern";
- they have produced few, if any, of the documents showing the amounts of non–8(a) and non-SDB government contracts they were awarded;
- they have produced few, if any, of the documents showing awards of options or extensions for upgrades of the legacy software they sold while making false certifications of NSA's size status;
- their document production to date has been inexcusably flawed; and
- they have produced few, if any, of the documents on which they rely in their motion for summary judgment.

*Id.* at 13–14. Accordingly, relator asks this court to compel the defendants to produce the remaining records regarding NSA's small-size status, to issue a discovery scheduling order, and to deny defendant's motion to stay.

In response, defendants state that relator's 56(f) motion is "nothing more than a belated and impermissible attempt to amend [r]elator's pleading, replace [r]elator's lawsuit with an entirely new theory, and obtain discovery on issues that are not before the Court." *Defendants' Statement and Opposition to Relator's Request for Discovery Scheduling Order and Motion Under Fed.R.Civ.P. 56(f)* ("Def.'s Opp.") at 1. Specifically, defendants contend that, *for the first time*, relator alleges that NSA failed to qualify as a "small business" and that relator needs discovery regarding NSA's status as a "small business" in order to oppose the pending motion for summary judgment. *Id.* at 2. Accordingly,

defendants insist that relator's discovery motion "amounts to a thinly veiled attempt to fundamentally revise his foundering case by injecting 'issues' that: (a) lie far outside the permissible scope of this lawsuit; (b) have never been contested; and (c) are legally baseless." *Id.* Defendants also insist that they have produced all of the documents that relator is entitled to receive. *Id.* at 3.

In addition, defendants contend that relator's third amended complaint fails to allege even generally that NSA fraudulently certified its status as a small business during the Limitations Period. According to defendants, relator's failure to raise these issues in his third amended complaint prevents him from doing so years after he initially filed suit, especially because the court has given relator ample opportunity to determine his theory of the case and draft a complaint that reflects that theory. *Order*, April 29, 2002. Yet, despite the court's warnings to "state with specificity which acts ... constitute alleged violations of the False Claims Act or overt acts in furtherance of the alleged conspiracy to violate the False Claims Act," *id.* at 4, defendants maintain that relator only states the term "small business" once, in paragraph 34, as part of the definition of a Section 8(a) entity and not as a separate claim or reference based solely on defendant's small business status. Def.'s Opp. at 15. Defendants insist that this is not a claim based on defendants' small business status alone and is quite different from the complaint's references to the "small, disadvantaged program," which were previously found to be sufficient to state a claim under the liberal pleading rules of the Federal Rules of Civil Procedure. *Id.* at 16.

## III. LEGAL STANDARDS

 Under Rule 56(f),[3] a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d

---

3. The court will look to the standards applicable to relator's 56(f) motion in determining whether

to stay discovery. In essence, the 56(f) motion and the motion to stay seek opposite relief.

859, 861 (D.C.Cir.1989); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, (D.C.Cir.1981). "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, 2003 WL 21486821, at *2 n. 5 (D.D.C. Mar.18, 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The district court has discretion in determining whether it should permit additional discovery before the motion for summary judgment is resolved. *Stella v. Mineta*, 284 F.3d 135, 147 (D.C.Cir.2002).

A party seeking the protection of Rule 56(f) "must state by affidavit the reasons why he is unable to present the necessary opposing material." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1278 n. 6 (D.C.Cir. 1983). *See also Hotel & Rest. Employees Union, Local 25 v. Attorney Gen.*, 804 F.2d 1256, 1269 (D.C.Cir.1986) (noting that this affidavit requirement helps "prevent fishing expeditions"), *vacated on other grounds*, 808 F.2d 847 (D.C.Cir.1987). The party seeking additional discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 248 n. 8 (D.C.Cir. 1999). It must also show a reasonable basis to suggest that discovery would reveal triable issues of fact. *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 237 (D.C.Cir.1999).

Of course, a party is only entitled to additional discovery if the information sought is relevant to the claims or defenses asserted in the case. Fed.R.Civ.P. 26(b)(1). In addition, Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. Fed.R.Civ.P. 9(b). One of the purposes of Rule 9(b)'s particularity requirement is to ensure that a defendant has notice of the claim. *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 252–53 (D.D.C.2004). Rule 9(b) also aims to prevent a claim from being filed as a "pretext for the discovery of unknown wrongs." *Kow-*

*al v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n. 3 (D.C.Cir.1994) (citation omitted). *See also Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (same). In addition, because the rule is chiefly concerned with the elements of fraud, the claimant must plead with particularity the circumstances of the fraud, namely the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C.Cir.2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981).

## IV. ANALYSIS

### A. Relator's Third Amended Complaint and the Scope of Permissible Discovery

A thorough review of the third amended complaint indicates that relator's allegations concern defendants' Section 8(a) and SDB status. In fact, the allegations in his complaint overwhelmingly demonstrate that this is the basis of his claim. For example, relator states that the defendants ran a business that was "falsely depicted as a minority-owned and minority-controlled firm." Complaint ¶ 1. The complaint also alleges that defendants submitted "false claims to obtain contracts that the U.S. Small Business Administration ... set aside for entities owned and controlled by disadvantaged persons admitted to the Section 8(a) Minority Small Business Development Program." *Id.* Other allegations in the complaint contain the following language: "fraudulent participation in the Section 8(a) Program," *id.* ¶ 2; "found others to conspire with him to profit from a Section 8(a)-certified company" *id.;* "falsely certified to the U.S. Government that it was a Section 8(a) entity," *id.* ¶ 8; "false Section 8(a) certifications," *id.* ¶ 9; and "scheme to market [their] software and services to the Federal Govern-

ment through a Section 8(a) entity," *id.* ¶ 31. Relator further alleges: "They merely signed periodic SBA forms and certifications required to maintain Section 8(a) status. All of these were knowing false statements, made to get Network Federal's claims approved and paid." *Id.* ¶ 42. Regarding the issue of who controlled the company, the complaint states that "the names of one or more of the disadvantaged owners appeared in other documents to perpetuate the charade of control." *Id.* As a result of defendants' alleged fraud, relator concludes that "sales . . . to the Government, federal contractors and subcontractors . . . never benefitted any 'socially or economically disadvantaged' person." *Id.* ¶ 60. The complaint also states: "Federal customers awarded these contracts to Network Federal without competition, or with only limited competition, because of Network California's fraudulent Section 8(a) certification." *Id.* ¶ 61. Thus, throughout the complaint, relator makes clear that his claims of fraud are based on defendants' alleged false representations of their Section 8(a) and SDB eligibility.

Unfortunately, relator does not explain how his third amended complaint could be read to include allegations of fraudulent representations regarding defendants' "small business" status. If he did, he could point to only a few references that could suggest such an interpretation. However, when read in context, all of these references indicate that relator was referring to his claims based on defendants' Section 8(a) and SDB status. For example, under the heading, "The Defendants' *False Section 8(a) Application* and Creation of a Conspiracy to Defraud the Government," relator alleges that the "application contained a certification that Network California was a small business concern owned and controlled by socially disadvantaged individuals." *Id.* ¶ 34 (emphasis added). Rather than state a claim based on defendants' small business status, this sentence clearly refers to defendants' status as a Section 8(a) entity. In addition, relator makes claims based on defendants' false valuation of the company, but those allegedly false certifications were made as part of defendants' annual Section 8(a) submissions. *Id.* ¶ 95. Finally, although relator indicates

that "Section 8(a) companies must qualify as small business concerns," *id.* ¶ 106, this reference to "small business concerns" is clearly included as part of his claims regarding defendants' involvement in the Section 8(a) Program.

Given the scope of relator's third amended complaint, therefore, any information regarding defendants' "small business" status is entirely irrelevant to his claims. Similarly, such information is irrelevant to any defenses the defendants may raise in response to relator's Section 8(a) and SDB status claims. The only logic according to which such information could be deemed relevant is as follows: because relator included allegations based on defendants' procurement of GSA Schedule Sales, Small Purchases and Micropurchases, and Subcontracts, and because, in some circumstances, government officials considered companies' small business status when awarding contracts, the information is relevant to relator's claims, and discovery regarding this issue should be allowed. In the normal case, that may be so. But, this is a case in which relator alleges fraud, and the requirements of Rule 9(b) apply. Despite the strict pleading requirements set out by Rule 9(b) and the court's admonition to allege "with specificity which acts [allegedly violate FCA]", *see Order,* April 29, 2004, at 4, relator simply has not met the standards required by that rule. With respect to any claim based on defendants' status as a "small business," relator has not stated with particularity the circumstances constituting fraud or mistake. *See* Fed.R.Civ.P. 9(b). His failure to do so has deprived defendants of notice of these claims, if any such claims were even contemplated when relator filed suit. *See Anderson,* 221 F.R.D. at 252–53. After all, in their motion for partial summary judgment, defendants clearly set forth their understanding that "[r]elator's suit does not challenge the fact that NSA was a bona fide 'small business' under applicable Government regulations. Only's NSA's status as a small, disadvantaged business under the Section 8(a) Program is challenged." Def.'s Mot. Partial Summ. J. at 2 n. 1.

For all of these reasons, discovery on the issue of whether defendant qualified as a

"small business" under the applicable federal regulations is not warranted because it is irrelevant to the claims or defenses asserted in this lawsuit.[4] Unless and until relator moves for leave to file a fourth amended complaint, is granted leave to do so, and files such a complaint in which he pleads with particularity defendants' alleged fraudulent representations regarding this issue, relator will not be permitted to seek information regarding defendants' "small business" status. To rule otherwise would be to allow "the discovery of unknown wrongs," which Rule 9(b) seeks to prevent. *See Kowal,* 16 F.3d at 1279 n. 3 (D.C.Cir.1994) (citation omitted).

## B. Specific Discovery Sought by Relator

### 1. Documents Related to Defendants' Status as a "Small Business"

For the reasons stated above, relator's 56(f) motion, as it relates to discovery regarding defendants' status as a "small business," is denied.

### 2. Discovery Relating to State of Mind

As stated above, relator indicates that, "[a]lthough [d]efendants' false certifications of 'small' business status were material as a matter of law, the factual issue of the states of mind of scores of government contracting officials ... obviously presents factual issues for which discovery is 'essential' to this case." Rel.'s 56(f) Mot. at 8–9. Defendants only moved for summary judgment on claims in which their Section 8(a) or SDB status was not an issue. Relator is seeking deposition discovery related to defendants' status as a small business to buttress his recent allegation that defendant made false certifications of its status as a small business. As I have previously explained, defendants' status as a small business is irrelevant to the FCA claims relator has made in this litigation. Therefore, such discovery will not be allowed.

### 3. Explanation of Problems with Documents Already Produced by Defendants [5]

#### a. Number Gaps

Relator complains that there are gaps in the Bates numbering of documents that defendants have already produced. As defendants note, defendants already explained these gaps to relator in a letter dated February 20, 2003. In short, the documents were numbered prior to any review of whether the documents were responsive to document requests or subject to applicable privileges. Thus, when the unresponsive and privileged documents were removed, there were "gaps" in the numbers of documents produced to the relator, a consequence that routinely occurs as a result of defendant's numbering system. Because defendants have no obligation to produce unresponsive or privileged documents, no further document production is necessary.

Relator also points out that defendants have produced only the odd-numbered pages of documents carrying the Bates numbers NSVA 0053233–40, possibly because the documents were double-sided but only one side of each document was copied and produced. While these gaps in page numbers may also be explained by defendants' routine practice of assigning Bates numbers before reviewing each document for responsiveness and privilege, I will ask defendants to carefully review this packet of documents to ensure that no documents were inadvertently omitted from production.

#### b. Duplicate Production

Relator also complains that he received duplicate copies of the same document. Defendants explain that one particular document was produced three times because it was found internal to several different document groups, and in context, did not constitute the same document. *Id.* at 12.

It is unclear why relator complained to the court about receiving more than one copy of

**4.** Accordingly, whether relator met his burden under Rule 56(f) of showing his entitlement to additional discovery on this issue is irrelevant.

**5.** This section deals only with documents that have already been produced in response to discovery requests served prior to defendants' filing of their motion to stay.

a document, except to argue that defendants' production was "sloppy." However, defendants' explanation regarding why the document was produced three times reveals that their document production was thorough and accurate. Relator simply has no grounds to complain to the court regarding this matter.

### c. Missing Documents

In addition, despite relator's insistence that there must be documents responsive to his discovery requests that have not yet been produced, defendants have represented to the court that there are no such documents and that they produced all responsive documents to which they did not object and to which they objected but the court ordered their production. *Id.* at 13. Defendants also offer the following as a possible explanation for why discovery produced fewer documents than relator expected: from November 1993 through October 1994, Section 8(a) sales constituted only 1.76% of NSA's business, from November 1994 through November 1995, Section 8(a) sales constituted only 2.5% of the total, and from November 1995 through November 1996, Section 8(a) business constituted only 0.6% of the total. *Id.* at 14 (citing Hoffman Aff. and Rule 56(f) Mot., Ex. 2, 3, and 4). The court cannot discern whether this information adequately explains why relator's expectations were not met, but for present purposes, all that matters is that defendants have certified that they produced all responsive, unprivileged documents. They cannot be asked to produce anything more.

### 4. *Copies of All invoices, Contracts and Bids or Proposals*

Relator states that he has identified defendant's "production deficiencies" and expects that they will be remedied expeditiously. Rel.'s Opp. and 56(f) Mot. at 11. In the absence of any further information, the court cannot compel defendants to produce any more than they already have.

### 5. *Any Documents Relied Upon by Defendants in Their Motion for Summary Judgment*

Without identifying any documents in particular, relator briefly states that defendants "have produced few, if any, of the documents on which they rely in their motion for summary judgment." *Id.* at 14. Relator's argument, however, is unclear. On one hand, he may be arguing that all documents relating to defendants' "small business" status have not been produced. On the other hand, he may be arguing that documents cited specifically by defendants in their motion for summary judgment were never produced to him. For the reasons stated above, relator is not entitled, at this point, to all documents relating to defendants' "small business" status, but fairness dictates that relator receive any documents cited specifically by defendants in their motion for partial summary judgment. Presumably, now that the motion has been filed, relator possesses all of these documents. In the interest of efficiency and completeness, however, I will order defendants to produce to relator a full set of all documents to which they cite or refer in their motion for partial summary judgment.

## V. CONCLUSION

In light of the court's denial of the motion to stay discovery, I will order the parties to submit a joint proposed scheduling order regarding any discovery that remains in this case. Of course, the parties are instructed to bear in mind the discovery limitations that have been established by this Opinion.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby **ORDERED** that:

1. Defendants' Motion to Stay Discovery [#110] is **DENIED**; and it is **FURTHER ORDERED** that

2. Relator's Request for Scheduling Order and Motion Under Fed. R. Civ. P. 56(f) Relating to Defendant's Motion for Partial Summary Judgement and State [#111] is **GRANTED IN PART AND DENIED IN PART**; and it is **FURTHER ORDERED** that

3. Defendant Network Software Associates, Inc., A Virginia Corporation's Motion for Protective Order [#118] is **GRANTED**; and it is **FURTHER ORDERED** that

4. Defendants carefully review the documents carrying the Bates numbers NSVA 0053233–40 to ensure that no documents were inadvertently omitted from production. If any were omitted, defendant shall produce them to relator by March 4, 2005; and it is **FURTHER ORDERED** that

5. By March 4, 2005, defendants produce to relator a full set of all documents to which they cite or refer in their motion for partial summary judgment; and it is **FURTHER ORDERED** that

6. By March 11, 2005, the parties submit a joint proposed scheduling order regarding any discovery that remains in this case.

**SO ORDERED.**